[No. 1160.]

# THE STATE OF NEVADA, ex rel. JOHN R. NEWNHAM, Relator *v.* THE STATE BOARD OF EDUCATION OF THE STATE OF NEVADA, Respondent.

THE STATE BOARD OF EDUCATION—TEXT BOOKS—WHEN RESOLUTIONS MAY BE RECONSIDERED.—The state board of education may, after it has passed a resolution prescribing a certain series of text books, reconsider its action and rescind such resolution at any time before the adoption of such books by the different school districts.

APPLICATION for *mandamus.*

The facts are stated in the opinion.

*A. C. Ellis,* for Relator :

I. When text books are once prescribed by the proper authority, every parent having children of school age attending the public schools, and who has procured such text-books, has a direct personal, legal right to have such books used in the schools. There can be no distinction taken between the enforcement of such right and the right of the parent to compel the *admission* of his child to the public schools when entitled to the benefit of such schools. Mandamus will lie to compel such admission. (*State ex rel. Garnes* v. *McCamm,* 21 Ohio St. 198 ; *Roe* v. *Deming,* 21 Ohio St. 666 ; *People* v. *the Board of Education,* 18 Mich. 400 ; *State ex rel. Stoutmeyer* v. *Duffy,* 7 Nev. 342.)

II. It was not within the powers of the board, after it had prescribed Appleton's readers as text books, on the first day of December, 1879, to reconsider this action and change the text books *on the third day of December* 1879. (*State ex rel. Flower* v. *Board of Education,* 35 Ohio St. 368 ; *People* v. *Board of Education,* 49 Cal. 684.)

*W. H. Davenport,* Attorney-General, for Respondent.

By the Court, LEONARD, J.:

Relator prays for the issuance of the writ of mandamus,

commanding respondent, the state board of education, to allow his child and all other children in the public schools of this state to use Appleton's school readers as text-books, and to take such steps as may be requisite for the introduction and use of said Appleton's school readers as text-books in the public schools of the state, and for the exclusion therefrom of Sheldon's readers. The statute provides that, "the state board of education shall have a seal. * * * It shall be the duty of said board to hold semi-annual sessions, for the purpose of devising plans for the improvement and management of the public school funds, and for the better organization of the public schools of the state, and such special sessions as may be called by the president. A full record of the proceedings of the board shall be kept by the secretary, and shall be embodied in the annual report of the superintendent of public instruction." (Comp. Laws, 3322.) "The state board of education shall have power, and it is hereby made their duty, to prescribe, and cause to be adopted, a uniform series of text-books in the principal studies pursued in the public schools, to-wit, spelling, reading, * * * and physiology ; and no school district shall be entitled to receive its *pro rata* of the public school moneys unless such text-books as prescribed by the state board of education shall be adopted and used in all the public schools. * * * Orthography, reading, * * * and geography shall be taught in all the public schools ; and in each school above the grade of primary, there shall be taught English grammar * * * and chemistry ; and in such schools as the board of trustees may direct, algebra, * * * astronomy, and the elements of book-keeping, or such other studies as the board of trustees may direct ; *provided*, that the text-books shall not be changed oftener than once in four years." (Comp. L. 3361.)

It will be seen that, by the first section of the statute quoted, the board of education has power to do, at a special session, any act that it may do at a regular or semi-annual session. It will be observed, also, that under the last section quoted the board has power, and it is its duty,

to *prescribe and cause to be adopted* a uniform series of text-books in the principal studies, including reading. No school district can receive its proportion of public moneys unless it *adopts and uses* such text-books as are *prescribed* by the state board; *and the text-books shall not be changed oftener than once in four years.*

The only facts of this case necessary to be stated are these: On the first day of December, 1879, Sheldon's readers were in use in the public shools of the state. It is not shown just when they were prescribed as text-books by the state board, or when they were first adopted and used in the public schools. It does appear, however, that they had been in use six years prior to May 1, 1883, and also that at its meeting held on the first day of December, 1879, the board did not intend any change in the readers used in the public schools, until September 1, 1880. It is probable that the four years provided by the statute, during which the Sheldon readers could not be changed, did not expire, in the opinion of the board, until September 1, 1880. To show the action of the board, we quote from its minutes:

"CARSON CITY, December 1, 1879.

"The board met as per announcement in circular issued May 29, 1879, to consider the matter of text-books. Members all present. * * * Mr. Hatch moved to make a change of readers. Carried. Messrs. Kinkead and Hatch voted in the affirmative, and Mr. Sessions in the negative. Mr. Hatch next moved to select a series of readers for use in the schools of Nevada for the next four years, beginning September 1, 1880. Carried by the same vote as above. The vote was taken by means of open ballot, and Appleton's readers were adopted. * * * It was moved by Mr. Hatch, and carried, that the secretary be authorized to enter into a contract with D. Appleton & Co. for furnishing readers in accordance with the proposition of their agent, Mr. White, and that in case of failure to fulfill said contract the agreement thus entered into shall be null and void. It was moved and carried that the consideration of the arith-

metics be postponed until the next meeting of the board, December fifteenth, prox. The proposition of D. Appleton & Co. (which was accepted) is as follows: * * *

JOHN H. KINKEAD, President.
D. R. SESSIONS, Secretary.''

"CARSON, Dec. 3, 1879.

"Special meeting called to reconsider and review the action of the board at its previous session. Present full board. Mr. Hatch moved to reconsider the action had in adopting the Appleton readers, and to defer any further consideration of a change of readers until next meeting. Carried unanimously. The board then adjourned to meet again on Monday, December 15th, proximo.

"N. B. There being no quorum present December 15, 1879, an adjournment was ordered, subject to call of the president. D. R. SESSIONS, Secretary.''

We shall concede, for the purposes of this decision, that on the first day of December, 1879, respondent, the board of education, *prescribed* Appleton's readers as text books for the public schools of this state, and that, if it did not have power to reconsider its action then had, it is now its duty to cause those readers to be *adopted and used* in the public schools for the period of four years. *State* v. *Board of Ed. of City of Columbus*, 35 Ohio St. 368, is cited by counsel for relator as being a case on all-fours with this, and we are urged to follow the decision there made as authority here. The value of a decision of another state court depends greatly upon the reasons given in its support, but beyond this, when it is based upon a statute, before we can be influenced by the conclusion arrived at, it must appear that, as to material points, the statute there construed was similar to the one we have under consideration. The school law of Ohio provided for a board of education for each district or city. In the case referred to, the board's powers and duties did not extend beyond the city of Columbus. These boards were required to hold regular meetings every two weeks, and were empowered to hold such special meetings

as they might deem necessary. (70 Ohio Laws, 197.) The statute also provided that "each board of education shall determine the studies to be pursued, and the text-books to be used in the schools under their control, *and no text-book shall be changed within three years after its adoption, without the consent of three-fourths of the members of the board of education given at a regular meeting.* * * *" (Id. 209, Sec. 52.) The italics are ours. By the next section the board of education of each school district was given the management and control of the public schools of the district. They had power within their district such as our law gives to the board of education of the state and the trustees of a district.

Under that law the court said: "The legal effect of the action of the board on the twelfth of August must be ascertained from a construction of section 52 of the statute (70 Ohio Laws, 209) under which its action was had. The first clause of the section, which alone bears upon this question, reads as follows: 'Each board of education shall determine the studies to be pursued, and the text-books to be used in the schools under their control; and no text-book shall be changed within three years after its adoption, without the consent of three-fourths of the members of the board of education given at a regular meeting,' etc. * * * The clause quoted is divisible into two sentences, each complete in itself. The first confers power on the board to act upon two subjects,—the studies to be pursued, and the text-books to be used in the schools. The second is a conditional restriction on the power of the board over the latter subject, when it is within the condition; and when the restriction is inapplicable, the power of the board over both subjects is equal and complete. In this case the restriction was inapplicable to the action of the board on the twelfth of August, for the reason that more than twice three years had then elapsed since the board had adopted the Cornell geographies as the text-book to be used in the schools. Consequently, at the date last named, the board could legally exercise, without restriction, all the powers conferred by the first sentence in the clause above quoted. Under this, the board

is to determine the text-books to be used. What is the meaning of the word *determine*, as here used, or what operation and effect ought to be given to it? When taken in connection with the purposes of the law, * * * and the subject-matter to which it relates, * * * it is manifest that the word 'determine' must mean something more than investigating and arriving at a conclusion by mental processes, although these are embraced. Official action is contemplated and required to give a practical effect to the word, and the injunction to do this is mandatory upon the board; and in order that those who must obey may know the will of the board, it is necessary that it should be declared in such a way that it may be known.

" The usual mode by which the board of education makes known its will on any subject over which it has control is either by motion, or by a resolution passed by the board at an official meeting and entered upon the record of its proceedings, where it may be seen by any party interested. All this was done in the case before us. On the fifteenth day of July, 1879, the committee on text-books made a report to the board on the subject; among others, of the text-books on geography then in use, and those which they recommended for use in the future, in which they give their reasons for excluding the Cornell series then in use, and substituting in their stead the intermediate, or No. 2, and the primary geographies of the Eclectic series. If the report as made had been adopted, its operation would have been to exclude the condemned series then in use, and to introduce those recommended into the schools to be thereafter used. By official action that part of the report referring to new geographies was laid over for two weeks. On the twelfth of August, 1879, at a regular meeting of the board, the report was taken up, when a proposition * * * was presented, stating the terms upon which they would furnish Harper's geographies for use in the schools. On motion of a member the name of Harper's geographies was substituted in the report of the committee for that of the Eclectic series. * * * * And there-

upon the report of the committee as amended was adopted.

"Whatever the legal effect of this action may be, it at least clearly shows that the board thereby intended to exercise the powers conferred upon it by law in reference to the text-books to be used in the schools on the subject of geography.  It appears to us that the legal effect of this action of the board, by whatever name it may be called, was the adoption of Harper's geographies as the text-books on that subject, to be thereafter used in the schools under its control until they are lawfully changed.  When the action of the board was consummated on the twelfth of August, its power over the subject was exhausted for the period of three years from that date, unless the text-book so adopted should be changed within that time by the consent of three-fourths of the members of the board, given at a regular meeting thereof.  The 'three years' begins to run from the date of the official adoption of a text-book, and not from the time such book is introduced and brought into actual use in the schools."

The court, therefore, decided that the bare majority vote on the twenty-sixth of August, 1879, reconsidering the vote of August twelfth, adopting Harper's geographies, was a nullity, because the action of the board on the twelfth was an adoption of Harper's, and the statute declared that they should not be changed within three years after their adoption.  The last conclusion necessarily followed the first. If the determination by the board that a text-book should be used was its adoption, then, of course, the three years began to run from the twelfth of August, and the power of the board over the subject for three years from that date was exhausted, for the law so declared.  If the action of the board on the twelfth of August constituted an adoption, as the court held, it is plain that it could not, twelve days or one day thereafter, reconsider its former action, and substitute some geography other than Harper's, in the face of a law declaring that no text-book should be changed within three years after its adoption.

But there is an important difference between the Ohio

statute and ours. The reason why the Ohio court said the board could not reconsider its former vote or adoption was because the statute prohibited further action for three years after August twelfth, the time of adoption. There is no semblance of such prohibition in ours. Here, text-books cannot be changed oftener than once in four years. There they could not be changed within three years after their *adoption,* and the action of the board alone constituted an adoption. Under our law it is the board's duty to *prescribe* and *cause to be adopted* a text-book in reading. On the first of December, 1879, let us say, it prescribed Appleton's series of readers for four years, commencing September 1, 1880. Nothing further was done prior to December third, when the former action was reconsidered, if the board had power to do so. Before the reconsideration the board did nothing furthering their adoption, which must be done by the districts, and not by the board. The board can prescribe rules governing districts in the matter of text-books. It can declare a time when the different districts shall discard the old series, and adopt and use the new. And if any district fails to comply with a reasonable rule in this respect, it must pay the penalty prescribed by the statute; it will not be entitled to receive its *pro rata* of public school moneys until it does comply. The different districts must *adopt* the books *prescribed* by the board. But if, before they are adopted, the board concludes that it has made an unwise prescription, we know of nothing in the law forbidding a reconsideration. In saying this, we have no reference to any contract made by the board for the purchase of books prescribed, for it is admitted that such contract could not be enforced by this proceeding in any event. The only statutory limitation upon the board's power is that text-books shall not be changed oftener than once in four years. The board's duty is to *prescribe, and cause to be adopted,* a uniform series of text-books. The statute makes the last duty as imperative as the first. The complaint made in this case is that the board fails to cause the adoption of text-books by it prescribed. By prescribing a text-book

simply, the board's duties are only half done. It must also see that the prescribed book is adopted, and thereafter, for four years, it cannot be changed. This is the sensible view of the statute. The law declares no means by which the board shall cause the adoption of text-books; but, the duty being enjoined, a power is given to use such reasonable means as are necessary for its proper performance. By a judicious exercise of this power the board need not experience much difficulty in performing their entire duty. We find no fault with the Ohio decision under the statute there in force. We only say that, under ours, it is not in point.

Counsel for relator refers also to *People* v. *State Board of Education*, 49 Cal. 684, where it is held that the board could not change text-books once adopted as a part of a uniform series without giving six months' notice as required by law. The question there decided is not involved in this proceeding, but an examination of the statute there referred to shows a marked difference between it and ours. The eighty-eighth section of the California statute provided that the state board of education should *prescribe and adopt* a uniform series of text-books, and that any books *once adopted* in the state series should be continued in use for four years. Indeed, the substance of the statute is that, when the board once adopts a text-book, it shall not thereafter change the same for four years. (See Stat. Cal. 1869, 1870, p. 847.) There, as in Ohio, the board alone adopts the text-books, and thereafter they cannot be changed for the period stated, except, in Ohio, by consent of three-fourths of all the members at a regular meeting, while here, after the board prescribes the book, the districts must adopt it as directed by the state board; and until both are done, there is no change in text books in the sense of our statute.

Mandamus denied.