## THE BOARD OF EDUCATION OF THE CITY OF DETROIT v. THE COMMON COUNCIL OF THE CITY OF DETROIT.

*Schools—Free text-books—Board of education of Detroit—Mandamus.*

1. It has never been claimed, so far as we are aware, that school boards have the power to furnish *free* text-books except by virtue of special legislation.
2. The action of the board of education of the city of Detroit in including in its annual estimate a sum for free text-books, in the absence of authority from a majority of the qualified electors as provided by section six of Act No. 147, Laws of 1889, is *absolutely* void.
3. The writ of *mandamus* will not be used to aid in the enforcement of an *illegal* claim.

*Mandamus.* Submitted April 29, 1890. Denied May 9, 1890.

Relator applied for *mandamus* to compel respondent to levy a certain sum for free text-books. The facts are stated in the opinion.

*W. E. Baubie,* for relator.

*Henry A. Chaney,* for respondent.

GRANT, J. This is a petition for the writ of *mandamus* to compel the respondent to levy its annual estimates of the amount required for the maintenance of the public schools of the city of Detroit during the fiscal year ending June 30, 1891. In the annual report submitted by relator to the respondent, under the heading "For Maintenance," appeared the following item: "Text-books, $15,000." Under the heading "Estimated Receipts," appeared the item, "For maintenance, $308,960"

Section 13, Act No. 331, Laws of 1873, provides that the board of education shall annually make an estimate of the amount of taxes deemed necessary for the ensuing or the current year, for all purposes of expenditure, and shall lay the same before the common council. It is then made the duty of the common council to place upon the tax rolls, and cause to be levied, the amount of such estimated expenditures, excepting for purchase of lots and erection of new buildings, with the necessary outhouses, fixtures, and furniture. The amount of this estimate and tax shall not be less than $4 for every child between the ages of 5 and 20 years, according to the last report on that subject. If such estimate exceeds $5 *per capita*, the council may approve or disapprove of such excess, or any part thereof.

The number of children was 63,009, and the *per capita* tax was fixed by the relator at $308,960, being the item above mentioned, for maintenance. The council, upon receiving the report, passed a resolution fixing and

adopting the estimates reported by the relator. The council, on the next day after adopting the above resolution, submitted the estimates to the board of estimates of the city, which reduced the *per capita* tax to $298,-960. This action by the board of estimates was reported to the council, which adopted it, and ordered the various amounts to be assessed, levied, and collected as approved by the board of estimates. The item of $15,-000 was for free text-books, and was rejected by the board of estimates for that reason; but the board added $5,000 for text-books for poor children, though only $2,-000 had been required for that purpose the year previous. This $10,000 rejected is the sole source of the contention.

The first contention of the relator is that the board of estimates has no supervisory power over the board of education funds, except that for purchasing lots and erecting school-houses, with the necessary out-buildings, fixtures, and furniture. In this contention it is correct. The board of estimates is limited in its jurisdiction to the several funds mentioned in the city charter. Act No. 488, Local Acts of 1887, chap. 8, § 4. The educational fund is not specified in the charter as among them. Act No. 424, Local Acts of 1889. The only power of this board over this fund is limited to the estimates of the board of education for purchasing lots and erecting school-houses, with the outbuildings, fixtures, and furniture. Over these latter estimates the board of estimates has supervisory control. This is expressly conferred upon it by Act No. 331, Laws of 1873, which is amendatory of "An act relative to free schools in the city of Detroit.

The second contention of relator is that, inasmuch as the amount asked for by it, and reported to the council, was within the five-dollar limit, the only power vested in the council was to order the tax placed upon the tax rolls and levied, regardless of the fact that some of the

items included in the estimates are illegal.    We cannot
agree with the relator in this contention.    If any of the
items are clearly illegal, it is the right, not only, but the
duty, of the council, to reject them, and refuse to spread
them upon the rolls.    The council cannot interfere with
the discretion of the board of education, and can only
reject such items as are clearly illegal.    We do not regard
the first resolution of the council, approving the estimates,
as final.    The final resolution was the one approving the
report of the board of estimates, and ordering the amount
therein specified to be levied.    This resolution was incon-
sistent with the first, and operated to repeal it.    We must
therefore determine whether the item for free text-books
is legal.

It has never been claimed, so far as we are aware, that
school boards had the power to furnish free text-books
except by virtue of special legislation.    That this has
been the common understanding is evidenced by the fact
that this power has been specially conferred upon some
municipal corporations, and the policy of its general
adoption has been discussed in the Legislature, and bills
have been introduced for that purpose.    Such a bill was
passed in 1889.    Act No. 147, Laws of 1889.    By section
6 of this act, it is provided that school-districts in cities
organized under special charters shall be exempt from the
provisions of the act unless the boards are authorized to
proceed under it by a majority vote of the qualified
electors of such districts.    No such vote has been obtained,
and the relator has taken no steps to submit the question
to a vote of the electors.    Its action, therefore, in pro-
viding for free text-books, was absolutely void.    But
whether the common council properly exercised its power
or not is, in fact, immaterial.    The writ of *mandamus*
cannot be invoked to assist in the enforcement of a claim
which is illegal.

The writ must be denied, with costs to the respondent.

The other Justices concurred.