HORATIO G. JONES v. THE BOARD OF EDUCATION OF THE CITY OF DETROIT.

*Schools—Adoption of text-books—Reconsideration of resolution.*

1. An averment in a petition for *mandamus* not expressly denied, but admitted to be true in part, in the answer, will be taken as true.

2. Act No. 165, Laws of 1887 (3 How. Stat. § 5067), prohibiting a change of text-books adopted by a school board under its provisions within five years, except by the consent of a majority of the qualified voters of the district present at an annual meeting, or a special meeting called for that purpose, applies to city schools organized under a special charter which does not provide for such annual meeting.

3. A *mandamus* is granted in this case to compel the board of education of the city of Detroit to rescind a resolution reconsidering one passed at a former meeting adopting a text-book for use in place of one which had been in use for upwards of five years, and making a different selection; it appearing that in the interim the publishers of the book first adopted, and the patrons of the school, had acted in reliance upon the rescinded resolution in the sale and purchase of books.

4. The *power* to adopt text-books is conferred by law, and cannot be affected by any rule of the board fixing a time for the reconsideration of motions and resolutions.

*Mandamus.* Submitted November 5, 1891. Granted November 13, 1891.

Relator applied for *mandamus* to compel respondent to rescind its action in adopting a certain text-book for use in the public schools. The facts are stated in the opinion.

*W. M. Lillibridge* (*Edwin F. Conely,* of counsel), for relator.

*W. E. Baubie* (*F. A. Baker,* of counsel), for respondent.

PER CURIAM. At a regular meeting of the board of education of the city of Detroit, held August 27, 1891, by a resolution duly passed, it adopted Reed's Word Lessons for use in the public schools in the city, the book formerly used having been in use upwards of five years. The schools were to open September 7. The pub-publishers of different books had made their propositions to the board for the introduction of their books into the schools. These propositions had been referred to a committee, who presented majority and minority reports at the meeting on the 27th. The board adjourned without any motion to reconsider. On August 29 a majority of the members of the board filed with its secretary a written notice that at the next regular meeting they would move to reconsider the vote by which this book was adopted. This meeting was held September 10, at which time the resolution was defeated, and another book adopted in its place. On September 2 the president of the board notified the publishers of Reed's Word Lessons that their proposition was accepted, and the book adopted. On the same date the superintendent of schools notified said publishers to forward to him the copies which they had proposed to furnish for teachers' desks and indigent pupils. The relator, a resident tax-payer of the city, had meanwhile purchased a book for his child. The petition alleges that about 10,000 copies had been forwarded to the superintendent, and about 6,000 copies sold to the pupils of the schools. Respondent admits that before the 10th day of September, 1891, a number of copies of said book were sold to pupils, but as to the exact number it is not informed. The averment in the petition must be taken as true, since it is not expressly denied by the answer, but is admitted to be true in part.

In 1887 (by Act No. 165) the primary school law was

amended, and, after providing for the selection and adoption of school-books by school boards, it (section 15) reads as follows:

"Each school board making a selection of text-books under the provisions of this act shall make a record thereof in their proceedings, and text-books once adopted under the provisions of this act shall not be changed within five years, except by the consent of a majority of the qualified voters of the district present at an annual meeting, or at a special meeting called for that purpose. * * * *   *This act shall apply to all schools in the State, including schools in cities or villages, whether incorporated under special charter or under the general laws.*"

1. It is insisted by respondent that the above provision does not apply to the schools of the city of Detroit, because they are organized under a special act, in which no provision is made for an annual meeting of the qualified voters.   The respondent exists under an act entitled "An act relative to free schools in the city of Detroit," approved February 24, 1869.   Section 8 of that act confers upon the board—

"Full power and authority to make by-laws and ordinances   *   *   *   relative to regulation of schools, and the books to be used therein."

No plainer words could have been used to express the intention of the Legislature than those of the last clause of section 15, above quoted.   By its express terms, no school is exempt from its provisions.   This Court cannot legislate into the act a different meaning from one so clearly expressed.   The evil to be avoided has been as prevalent in the schools of the cities as in those of the country.   The fact that no provision is made in the act under which respondent is organized for an annual meeting of the voters furnishes no pretext for holding that the Legislature did not intend the provisions of section 15 to apply to city schools organized under special acts.

2. The respondent provided by rule that a motion to reconsider shall be in order only at the same or first subsequent meeting, and no resolution shall be acted upon at the meeting at which it is introduced, if objected to by any member, but shall lie upon the table, to be taken up as unfinished business at the next or any subsequent meeting. As above shown, action was taken, and the board adjourned. The publishers' of the book adopted, and the patrons of the school, had acted upon it. We think, under these circumstances, that the board had no power to reconsider its action. The power to adopt textbooks is conferred by the law, and cannot be affected by any rule of the board fixing a time for the reconsideration of motions and resolutions. *State v. Board of Education*, 35 Ohio St. 368; *State v. State Board of Education*, 18 Nev. 173 (1 Pac. Rep. 844). We have not before us a case where the motion to reconsider was carried before the publishers and patrons of the schools had acted upon the faith of the resolution originally adopted, and upon that we express no opinion.

The writ must issue as prayed.