17  548
.34  275

CAMPANA, Respondent, *v.* CALDERHEAD et al., Appellants.

[Submitted February 12, 1896.  Decided March 2, 1896.]

Schools—*Text books—Repeal of statute.*—The act of March 5, 1889, establishing a series of text books in the public schools and which was to continue in force for six years from July 1, 1889, "or until changed in pursuance of law," if it did .not expire by its own provisions on July 1, 1895, was repealed by sections 5181, 5182, of the Political Code which took effect on that date.

Same —*Text books—Powers of trustees—Constitutional law.*—Section 1, article XI, of the constitution, making it the duty of the legislative assembly to establish and maintain "a general, uniform and thorough system of public. free common schools" does not require the adoption by that body of a uniform series of text books throughout the state, and where the legislature has failed to make provision therefor, or to devolve the duty of doing so upon some officer or board, the trustees of a school district, under the general powers vested in them by section 1797 of the Political Code, may pre-scribe what books shall be used in the schools of that district.

*Appeal from Second Judicial District, Silver Bow County.*

Injunction to restrain school trustees from carrying out .an order changing text books and from completing a contract for supplying the new, books.    Judgment was rendered for the plaintiff below by McHatton, J.    Reversed.

Statement of the case by the justice delivering the opinion.

The plaintiff is a resident and taxpayer in school district No. 1 of Silver Bow county.    The defendants constitute the board of trustees of said school district.

On the 20th day of July, 1895, said board of school trustees made an order adopting for use in the public schools of said district certain text-books, which books were different from those used in the schools of the district during the six years prior to the date of the order.    The board of trustees at the same time entered into a contract with a book publishing firm, by which said firm agreed to furnish the new books adopted by the board at stated prices for a period of six years, or until such time as another series of books might be provided for by the board.

This action was brought to enjoin the school board from

carrying out the order changing the series of books to be used in the public schools in the district, and also from carrying out the contract entered into with the book publishing firm. The defendants demurred to the complaint. The court overruled the demurrer, and, defendants declining to answer, judgment was entered in favor of the plaintiff in accordance with the prayer of his complaint. From the judgment, defendants appeal.

*J. L. Wines & M. L. Wines, E. S. Booth, Henri J. Haskell,* Attorney General, and *Ella K. Haskell,* for Appellants.

*Charles R. Leonard* and *Howell & Harney,* for Respondent.

PEMBERTON, C. J.—The principal question presented by the appeal is as to whether, under the laws of the state, the board of trustees has the authority to make the order changing the series of books used in the public schools of the district, and enter into the contract with the book publishing firm to furnish the same, which order and contract are set out in the statement.

On the 5th day of March, 1889, the legislature passed "An act entitled an act to amend an act entitled an act to establish a series of text-books in the public schools." This act was to continue in force for six years from the 1st day of July, 1889, "or until changed in pursuance of law." This act, we think, expired, by its own terms, on the 1st day of July, 1895. The words, "or until changed in pursuance of law," reserved to the legislature the right to change the books before the expiration of six years. But if this law did not expire by its own provisions on that day, we think it was repealed by sections 5181, 5182, pt. 5, tit. IV, vol. 1, of the Codes, which took effect July 1, 1895.

While the Codes repealed the law of March 5, 1889, establishing a series of text-books for use in the public schools of the state, they do not contain any provision prescribing a series of books for such use. So that we think it cannot be contended that there was any law of this state prescribing a

series of text-books for use in the public schools on the 20th day of July, 1895, when the defendants adopted the books for use in said district, and entered into the contract sought to be enjoined.

It is contended, however, that the constitution imposes the duty upon the legislature of establishing a series of text-books for use in the public schools of the state. Section 1, art. XI, of the constitution provides: "It shall be the duty of the legislative assembly of Montana to establish and maintain a general, uniform and thorough system of public, free common schools." Counsel for the respondent contend that, under this clause of the constitution, the duty is imposed upon the legislative assembly to establish a uniform system of text-books for use in the public schools of the state, and that, the legislature having failed to perform this duty, and not having conferred the authority so to do upon the trustees of the school district, they had no authority to adopt text-books for use in this district. While it is not disputed that the legislative assembly has the power to establish a series of text-books for use in the public schools of the state, we do not think the clause of the constitution quoted above requires the adoption of a uniform series of text-books throughout the state by that body.

We think the duty of establishing and maintaining "a general, uniform and thorough system of public, free common schools," imposed by the constitution upon the legislative assembly, does not necessarily imply that that body shall establish and maintain a uniform series of text-books throughout the state for use in the public schools.

The states of Minnesota, Indiana, Washington, Mississippi, Kansas, Wisconsin, and Illinois, have constitutional provisions very similar to ours in relation to public schools. In none of these states has it ever been considered, either by the legislature or courts, that the constitutional provision requiring the legislature to establish and maintain a uniform system of free common schools made it necessary that the text-books used in the schools should be uniform throughout the state, in order

that there should be a uniform system of schools. (*Curryer v. Merrill*, 25 Minn. 1–4; *State v. Haworth*, 122 Ind. 462, 23 N. E. 946; *State v. Womach*, 4 Wash. 19, 29 Pac. 939; *Effingham v. Hamilton*, 68 Miss. 523, 10 South. 39; *School Dist. v. Shadduck*, 25 Kan. 467; *Board of Education v. Welch*, Kan. 33 Pac. 654; *Powell v. Board of Education*, 97 Ill. 375; *Richards v. Raymond*, 92 Ill. 612.)

It is conceded that the last legislature did not specially delegate to any officer or board the right or duty to establish a uniform series of books for use in the common schools of the state. The legislature having failed to establish a uniform series of books for use in the common schools of the state, and not having devolved by special act the power or duty to do so upon any person, officer or board, may the board of trustees of the school districts, under general power vested in them, prescribe what books shall be used in the common schools of their districts ?

Chapter 6, p. 224, Political Code, establishes a uniform system of common schools, and section 1860, *Id.*, defines a common school. Section 1790, *Id.*, provides that, "except when authorized by law, every school district is under the control of a board of school trustees." Section 1797, *Id.*, prescribes the powers of school boards. These powers are very full and general. Under and by this statute it can scarcely be denied that to the school boards is delegated the authority to look after the interests of the public schools in their district, and to see that the uniform system of common schools established by the legislature is so supported and conducted as that the people may receive the benefits intended. If it be the duty of the school boards to provide for the general welfare of the schools in their districts, will it be said that they can do everything else to secure this end except prescribe a series of text books for use in their districts, in the event the legislature shall fail to do so, or give some other officer or board the right to do so ? Shall the whole uniform system of free common schools, established by the legislature in accordance with constitutional injunction, fail and go to pieces under such con-

ditions, rather than have the trustees act, in such emergency, by prescribing text books for the children in the schools under their control, and for whose welfare it is the duty of the trustees to make provision?

Under section 1797, Political Code, the board of trustees have power "to prescribe and enforce rules not inconsistent with law, or those prescribed by the superintendent of public instruction, for their own government of schools under their supervision." In *State* v. *Webber*, 108 Ind. 31, 8 N. E. 708, a case involving questions similar to the one at bar, it was held, in the absence of any statute expressly granting the trustees or any one else authority to prescribe what books should be used, that the superintendent of the district school, with the sanction of the trustees, might require, as a rule of school, the pupils to use certain music books, and that doing so was the exercise of proper discretionary power.

We are of the opinion that, under the circumstances and conditions of this case, the legislature having failed to prescribe a uniform series of text books for use in the common schools of the state, and having failed to give special authority to any officer or board so to do, the trustees of the school districts of the state have the right, under the general powers vested in them by law, to prescribe a rule designating text books for use in the common schools of their districts. The exercise of such power pertains to the government of the schools under the supervision of the trustees. We are therefore of the opinion that the lower court erred in overruling the defendants' demurrer.

The judgment appealed from is reversed, and the cause remanded, with instructions to sustain the demurrer of the defendants.

*Reversed.*

De Witt and Hunt, JJ., concur.