ATTORNEY GENERAL, *ex rel.* MARR, *v.* BOARD OF EDUCA-
TION OF DETROIT.

D. C. HEATH & CO. *v.* SAME.

1. EQUITY JURISDICTION—INJUNCTION—BREACH OF CONTRACT.
   A bill in equity will not lie, at the suit of a schoolbook pub-
   lisher, to enjoin a board of education from making a change
   of text-books in the public schools, in violation of an alleged
   contract with complainant, as there is an adequate remedy
   at law.

2. SAME—UNCERTAINTY OF MEASURE OF DAMAGES.
   Equity will not entertain a bill to restrain a breach of contract
   solely because of the uncertainty of the measure of damages
   in case of such breach.

3. SAME—MULTIPLICITY OF SUITS.
   Nor, the contract covering a term of but three years, can a
   resort to equity be justified on the ground of preventing a
   multiplicity of suits, since that matter is entirely within the
   control of complainant.

4. SCHOOLS AND SCHOOL DISTRICTS—ADOPTION OF TEXT-BOOKS—
CONTRACT WITH PUBLISHER.

The provision of the free school text-book law, that books once
adopted by the board shall not be changed within five years
(2 Comp. Laws, § 4775), was designed for the protection of
the public, and not for the benefit of book publishers; and
hence a resolution of a board of education, directing the pur-
chase of a certain number of copies of a specified text-book
for use in the schools, did not, with the aid of such statute,
amount to a binding contract between the board and the
publisher of such book for the use thereof for the statutory
period.

5. SAME.

Nor could the additional fact that the purchase was preceded-
by a letter from the publisher to the superintendent of
schools, fixing the price of such book with a view to its "com-
plete introduction" into the schools, operate to effect such
contract.

6. SAME—SUFFICIENCY OF ADOPTION.

But such resolution constituted a sufficient adoption of the
book to preclude the board from changing the same within
the five years fixed by the statute.

7. SAME—LIMITATION.

In such case the five years began to run from the date of the
resolution, and not from the time the book was completely
installed in all the schools.

8. SAME—UNIFORMITY OF TEXT-BOOKS.

The provision of the statute (2 Comp. Laws, § 4775) that all
text-books used in any school district shall be uniform in any
one subject, requires uniformity of the books used in the
same grade only, and does not require that all text-books
used in different grades on the same subject shall be of the
same series.

9. SAME—VALIDITY OF PURCHASE.

A resolution of a board of education to purchase certain text-
books for "supplementary use" in the schools shows that
there is no intention of adopting the books, within the sense
of the statute, and the purchase is illegal and void.

Appeals from Wayne; Donovan, J.   Submitted May
14, 1903.   (Docket Nos. 71, 72.)   Decided June 30, 1903.

Bills by Horace M. Oren, attorney general, on the

relation of Maurice R. Marr and Peter Guenther, and by
D. C. Heath & Company, against the board of education
of the city of Detroit, to enjoin a change of text-books in
the public schools. From decrees dismissing the bills,
complainants appeal. Affirmed.

Complainant D. C. Heath & Co., a corporation organ-
ized under the laws of the State of Maine, filed this bill.
It alleges that it is a publisher of schoolbooks known as
"Walsh's Arithmetic;" that this arithmetic is divided
into three volumes,—one called the "Primary," and
volumes 2 and 3 the "Grammar School," parts; that the
defendant school board solicited bids; that complainant
put in a bid, which was accepted; that in August, 1897,
the Walsh Grammar School Arithmetic was introduced
by resolution of the school board of the city of Detroit,
directing the purchase of a certain number of copies thereof
for use in the schools; that similar resolutions followed in
September and December, by which the Grammar School
Arithmetic was adopted in accordance with said bid and
proposition; that the exchange for the old arithmetics was
carried out as fast as was feasible; that this Grammar
School Arithmetic was not fully installed until May, 1898;
that the Primary Arithmetic has never yet been fully
installed; that on August 22, 1901, the school board
passed a resolution directing that the Werner Primary
Arithmetic be adopted for use in the schools, and that on
July 24, 1902, the board passed another resolution direct-
ing that the Werner Arithmetic be adopted for general
use in the grammar grades; and that these resolutions are
void. The prayer of the bill is that the resolutions adopt-
ing the Werner Arithmetic be declared void, and the
defendant enjoined from proceeding thereunder, and from
discontinuing the use of complainant's arithmetic in the
schools of the city. This bill was filed August 8, 1902.
On August 25th the attorney general filed a similar bill
upon the relation of two citizens and members of the
school board. The prayer of the latter bill is—

"That the date at which the Walsh series of arithmetics was adopted and actually introduced into the schools of the city of Detroit may be fixed and determined by the decree of this court, or, if it is competent to introduce only a part of a text-book into the public schools, that the date at which the Walsh Primary Arithmetic was introduced into the schools may be ascertained and determined by the court, and also the date at which the Walsh Grammar School Arithmetic was introduced into the schools may be determined and ascertained; that the introduction of said Werner's Primary Arithmetic may be declared to be illegal, and the said board ordered and directed to withdraw said arithmetic from the public schools; that said board may be temporarily and perpetually enjoined from making any change in the text-books in use in the public schools of the city of Detroit, unless the full period of five years of their actual introduction and use in the public schools has expired, and that said board be temporarily and perpetually enjoined from withdrawing the Walsh Arithmetics from the public schools of said city until after the 1st day of September, 1905."

By stipulation the two suits are consolidated and heard as one. Answers were duly filed, proofs taken, and decrees entered dismissing the bills.

The laws of the State applicable to the questions raised are section 4680 of the general school law (2 Comp. Laws), which provides, among other things, that:

"Text-books once adopted under the provisions of this act shall not be changed within five years, except by the consent of a majority of the qualified voters of the district present at an annual meeting, or at a special meeting called for that purpose."

And section 4775, known as the act "providing for free school text-books," which also provides that "text-books once adopted under the provisions of this act shall not be changed within five years," and that "all text-books used in any school district shall be uniform in any one subject."

And section 4776, providing as follows:

"The district board of each school district shall select the kind of text-books on subjects enumerated in section

one to be taught in schools of their respective districts: *Provided*, that nothing herein contained shall require any change in text-books now in use in such district. * * * If a majority of all the voters, as above provided, present at such meeting, shall authorize said board to raise by tax a sum sufficient to comply with the provisions of this act, the district board shall thereupon make a list of such books, and file one copy with the township clerk, and keep one copy posted in the school, and due notice of such action by the district shall be noted in the annual report to the superintendent of public instruction. The district board shall take the necessary steps to purchase such books for the use of all pupils in the several schools of their district, as hereinafter provided. The text-books so purchased shall be the property of the district purchasing the same, and shall be loaned to pupils free of charge, under such rules and regulations for their careful use and return as said district board may establish."

And section 4777, which provides as follows:

" It shall be the duty of the district board of any school district adopting free text-books provided for in this act to make a contract with some dealer or publisher to furnish books used in said district at a price not greater than the net wholesale price of such books."

And section 4780, which provides as follows:

" That school districts in cities organized under special charters shall be exempt from the provisions of this act, but such districts may, when so authorized by a majority vote of their district boards, submit the question of free text-books to the qualified voters of said districts. If a majority of the qualified electors vote in favor of furnishing free text-books, such district boards shall have authority to proceed under the provisions of this act."

In November, 1891, the question was submitted to the voters, and they adopted the free text-book system. It has been in operation in the district since that time.

*Horace M. Oren*, Attorney General, and *Herbert L. Baker* (*Fred A. Baker*, of counsel), for complainants.

*T. E. Tarsney* and *P. J. M. Hally* (*H. H. Hatch*, of counsel), for defendant.

GRANT, J. (*after stating the facts*). The questions presented are these:

(1) Has complainant D. C. Heath & Co. presented a case for equitable relief by injunction?

(2) Has any one or all of the Walsh series of arithmetics been adopted, so as to bring it within the five-year limit?

(3) When was the Walsh Grammar School Arithmetic adopted?

(4) Did the adoption and use of the Walsh Grammar School Arithmetic carry with it the adoption of the Walsh Primary Arithmetic?

(5) Has the Walsh Primary Arithmetic been adopted?

1. If the complainant D. C. Heath & Co. has any standing in the court, it is because it has made a valid contract with the defendant for five years, either for its entire series of arithmetics or for the Grammar School Arithmetic. It seeks an enforcement of this contract in equity. If it has a valid contract, its remedy at law is complete, in the appropriate action for breach of contract. Counsel cite in support of their right to maintain this suit *Steward* v. *Winters*, 4 Sandf. Ch. 587; *Hamilton* v. *Dunsford*, 6 Irish Ch. 412; *Kemp* v. *Sober*, 1 Sim. (N. S.) 520. In *Steward* v. *Winters* a lessee was restrained from carrying on a business upon the rented premises, which he had covenanted not to carry on. In *Hamilton* v. *Dunsford* it was held that the court had jurisdiction to grant relief on a covenant not to remove machinery from a mining property. In *Kemp* v. *Sober* the defendant was carrying on a business contrary to the covenants in the deed of conveyance to him. He was properly enjoined.

It is urged as a ground for equitable interference that the measure of damages is uncertain, and that the thing itself is what the complainant seeks, and that to which it is entitled. It is not a ground of equitable jurisdiction that, in case of a violation of a contract, the damages are uncertain. If parties have deliberately made such a contract that, in case of a violation by either, no damages can be assessed on account of uncertainty, certainly equity can-

not for that reason compel either party to perform the contract.

There is no occasion to resort to equity to avoid a multiplicity of suits. Its contract had only three years to run from the date of the commencement of this suit. It could wait three years and bring one suit for damages, or could bring a suit at the end of each year, or as often as it chose, to recover damages. It was not threatened with a multiplicity of suits. The number of suits it might bring would be of its own choosing. The jurisdiction of chancery to avoid a multiplicity of suits has no application to this case.

The mere requirement of the law that books, when adopted, shall not be changed for a given time, and the resolution for the purchase of complainant's Grammar School Arithmetic, to take the place of those then in use, did not constitute a binding contract between complainant and defendant. That law was enacted, not for the protection of book dealers, but for the protection of the public. *Bancroft* v. *Thayer*, 5 Sawy. 502 (Fed. Cas. No. 835).

The law requires boards of education to enter into contracts with some dealer or publisher for the purchase of books at not to exceed wholesale prices. No such contract was made. The several resolutions of the board for the purchase of this arithmetic, under the advertisements for bids, and the furnishing of them by D. C. Heath & Co., did not constitute a five-year contract. These transactions covered only the books they purchased. The board, at a meeting held August 4, 1897, recommended the purchase of 400 Walsh's Grammar School Arithmetics. On August 25, 1897, the agent of complainant wrote to the superintendent of public schools of Detroit a letter, in which he said:

"Looking to the complete introduction of the Walsh series arithmetic into your schools, we beg to make the following proposition."

Here follows the proposition, giving prices of the Walsh Arithmetics, and the price to be paid for those which they were to supplant. Other correspondence passed between

this agent and the superintendent. This correspondence did not make a five-year contract, and, besides, there is no evidence that it was submitted to the board, and action upon it taken by them.

It follows that the bill of D. C. Heath & Co. was properly dismissed.

2. But, upon the bill filed by the attorney general on behalf of the people, the whole subject is open for investigation. An examination of the record conclusively shows that the defendant board had paid little heed to the law. It has not entered into contracts as the law provides it should, but has substantially ignored the law, and now insists that there is no valid adoption of any text-books, for the reason that it has not complied with the law. That the rights of the people under the law should be thus ignored will not be approved by the courts, if the action taken by the board of education can be reasonably construed into an adoption of a text-book, within the spirit of the law. It does not lie in the mouth of this defendant to say to the people of the school district: "By resolution, we have substituted one text-book for another; have provided for the purchase of a new in exchange for the old. We have not complied strictly with the law in adopting this text-book, and therefore we are at liberty to at any time make another change." To uphold such a contention would be little short of a disgrace to the administration of law, and put it in the power of every school board in the State to virtually annul the law, as the defendant apparently has done in this case. We are therefore constrained to hold that the resolution in August, 1897, for the purchase and use of the Walsh Grammar School Arithmetic, was a sufficient compliance with the law, and that it was not in the power of the defendant to change it within five years.

3. We are of the opinion that the five years began to run from the date of the adoption of the resolution for the purchase and use of the Grammar School Arithmetic, and not from the time this arithmetic had been completely

installed in all the schools, in place of the others which it supplanted. Steps were immediately taken to introduce this book in the schools. There is no reason to doubt that the defendant used reasonable diligence in complying with the wishes of the district, as indicated at the election, and in placing this arithmetic in the schools. There might be very good reasons why the change should not be made all at once. The language of the statute is "adopt." Books are adopted when such action as the statute provides is taken, and not when every other book then in use has been removed, and the new one substituted. We think that this is the plain meaning of the statute. Unless this be so, the adoption must in most instances take place at some indefinite time after the resolution of adoption, for it would be impossible to effect a change immediately. If in the resolution of adoption a definite time were fixed for the installment of the new book, another question would be presented, upon which we express no opinion. Under this holding, the five years for the use of the Walsh Grammar School Arithmetic had expired. *Jones* v. *Board of Education*, 88 Mich. 371 (50 N. W. 309).

4. The adoption of the Walsh Grammar School Arithmetic did not mean the adoption of the Primary Arithmetic by the same author. Educators may think that the primary arithmetic of one author is better than that of another, and that the higher arithmetic of the other author is better. This law does not mean that the school board is obliged to use all the books of the same series for all the grades of the school. They are at liberty to select what shall be used in each grade, and as to those there must be uniformity. The term "uniformity" does not mean that all the text-books of one author in grammar, arithmetic, history, physiology, etc., for the different grades of scholars, must be used. Boards of education are at liberty, under this law, to adopt the book of one author for use in all the primary departments, and the book of another author on the same subject in all the grammar or higher depart-

133 Mich.—44.

ments.    All the law requires is that they be uniform in the same grade.

5. On August 23, 1900, the defendant board passed a resolution to purchase 4,000 copies of Walsh's Primary Arithmetic, at 24 cents per copy, for "supplementary use." This purchase was wholly illegal. The sole authority for such purchases must be found in the statute. *Detroit Board of Education* v. *Detroit Common Council*, 80 Mich. 548 (45 N. W. 585). Upon the face of the resolution, it appears that they were not purchased for general use in the schools, or with any intention of adoption. On the contrary, the language of the resolution is repugnant to any intention to adopt. It follows from the above that Walsh's Primary Arithmetic has never been adopted.

Under the above holding, both decrees must be affirmed.

The other Justices concurred.