THE STATE OF KANSAS, *ex rel.* ERNEST R. SIMON, as
County Attorney, etc., *Plaintiff*, V. E. T. FAIRCHILD
et al., as the State Textbook Commission, etc., *De-
fendants.*

No. 18,270.

SYLLABUS BY THE COURT.

TEXTBOOKS—"*A Uniform Series*"—*Construction of Statute.* The
words "a uniform series" as used in section 4 of chapter 179
of the Laws of 1897 (Gen. Stat. 1909, § 7813), which au-
thorizes the school textbook commission to select and adopt
"a uniform series" of school textbooks for use in the public
schools of the state, have reference to the whole series of
textbooks adopted for use in the public schools. The use must
be uniform in all schools of the same grade. The textbooks
adopted upon any subject may be made up of books prepared
by different authors, provided the same textbook is adopted
for use in the same grade in all the public schools. It is for
the textbook commission, in its discretion and judgment, to
determine whether or not textbooks by different authors upon
the same subject are so arranged as to permit them to be used
connectedly.

Original proceeding in mandamus.    Opinion filed
July 6, 1912.    Writ denied.

*Ernest R. Simon*, county attorney, *Hugh T. Fisher*,
and *T. F. Garver*, all of Topeka, for the plaintiff.

*John S. Dawson*, attorney-general, for the defendants.

The opinion of the court was delivered by

PORTER, J.: Original proceeding in mandamus. The
state, on the relation of the county attorney of Shawnee
county, has brought this action asking for a writ to
compel the defendants to reconvene as the State Text-
book Commission and to let contracts for readers and
geographies for use in the public schools of Kansas.

It is alleged in the petition that the commission re-
cently awarded the contract for first, second, and third
readers to The Wooster Publishing Company and the
contract for the fourth and fifth readers to The Uni-

versity Publishing Company; in letting contracts for geographies it adopted for use in the schools King's Elementary Geography, published by Scribner's, and selected as the advanced text on geography a book published by the Macmillan Company, called Tarr & McMurray's Advanced Geography. The defendants have demurred to the petition.

The only question involved is the right and authority of the State Textbook Commission to select and adopt what the plaintiff terms "split" series of textbooks. It appears that The Wooster Publishing Company publishes a series of readers of which Miss Wooster is the author, and that she has a complete series of readers entitled first, second, third, fourth, and fifth, which were offered to the commission for adoption as a series; that The University Publishing Company likewise publishes an entire set of readers from first to fifth; and that there were offered to the commission King's Elementary and Advanced Geographies, both by the same author, and that the Macmillan Company publishes an elementary and an advanced geography which were offered for adoption. It is the contention of the plaintiff that the commission had no authority to adopt part of a series of textbooks by one author and part of another series by a different author.

The state textbook law is chapter 179 of the Laws of 1897 (Gen. Stat. 1909, 7810-7832). Section 4 provides, among other things, as follows:

"The school textbook commission herein provided for shall be empowered and it is hereby authorized to select and adopt a uniform series of school textbooks for use in the public schools of the state of Kansas, in the following-named branches, to wit: Spelling, reading, arithmetic, geography. . . . *Provided,* That the matter contained in the subject of reading shall consist of lessons commencing with the simplest expressions of English, through the regular gradations of lessons up to and including the highest style of both poetry and prose: *Providing,* That no textbook shall be adopted by this commission that does not equal in

quality of matter, material, binding and mechanical execution and approximately equal in size the following textbooks in general use, namely: The speller to McGuffey's new speller, the readers to McGuffey's readers, the arithmetics to White's series of arithmetic,. the geographies to Rand & McNally's geography."

The question to be determined turns upon the meaning of the words "uniform series of school textbooks." The plaintiff concedes that the word "uniform" refers to the use of the books, and that one of the purposes of the legislature is that the different schools in the same grade shall use the same books. Counsel insist, however, that if this were the only purpose of the legislature the word "series" would not have been used in the statute. The word "series" was employed, they say, because one of the main objects in the preparation of a set or series of school textbooks is that there shall be logical arrangement in the contents of the several books upon any particular subject, and that each book shall have a definite and proper relation to the book preceding it upon the same subject; that this was in the legislative mind when it required the selection and adoption of a series of readers equal in quality of matter to McGuffey's readers. It is insisted that it will tend to put into the hands of the school children a better-arranged series of school books if the books upon any particular subject are prepared under the same supervision than would result from a selection of books which overlap, or where one in a series does not properly and connectedly succeed another,

The plaintiff has not been able to find any authorities directly in point, and obviously the question is one which must be determined from a consideration of the statute itself. We have no difficulty in arriving at the conclusion that the demurrer must be sustained. This follows from a consideration of the entire statute creating the textbook commission. It is a matter of common knowledge that the principal mischief sought to be

avoided by the statute was the lack of uniformity in the books in the same grades of the public schools, which necessitated the purchase of new books for school children when a family moved from one town to another, or from one school district to another. Identity of authorship in a series of readers or geographies or grammars was not in the legislative mind. It is unreasonable to assume that it could have been. The intention manifestly was to give to the textbook commission a wide discretion in selecting a series, thus insuring not only uniformity in use in the same grade of schools throughout the state, but providing what the commission should consider to be the best textbook upon a given subject for each grade of school. It will doubtless be found that in many instances the author of a series has produced a textbook for use in one of the elementary grades, which, in the judgment of the commission, is superior to that of all other authors, while the book by the same author for use in one of the more advanced grades may be, in the judgment of the commission, inferior in quality of matter to the book of the other author. The legislature was not concerned as to what might prove the most advantageous to publishers or authors of textbooks. In case the commission should find it impracticable or impossible to secure from publishers bids for a textbook upon any subject for use in any grade of the schools which the commission should deem suitable in quality or price, the legislature gave it authority to purchase the manuscript and copyright of any textbook and to cause the same to be published and supplied to the schools of the state. (Laws 1897, ch. 179, § 8, Gen. Stat. 1909, § 7817.) We construe the words "uniform series" to mean the whole series adopted for use in the schools. Their use must be uniform in all the schools of the grade where the particular book is used. The intent of the legislature was not to provide a set of books on one subject necessarily by the same author. When a series of readers

has been adopted it may be made up of books prepared by different authors. It is no less a uniform series of readers if the reader adopted for use in each grade is by a different author. The legislature gave the commission full power and discretion to use their judgment in selecting the kind of textbooks, subject to certain standards. This is manifest by a reference to section 7815, which limits the price at which textbooks are to be sold to the people of the state for use in the public schools. The same section further provides that the bids are to be taken on single books, and the maximum price of each book is designated, beyond which the commission has no power to make a contract. Section 7815 also provides as follows:

"And said commission shall have the right to reject any and all bids, and at their option shall have the right to reject any bid as to part of such books and to except [accept] the same as to the residue thereof."

If there were the slightest doubt about the meaning of the words "uniform series" in the other section, it disappears by reference to the latter section, since the commission is expressly given the right to adopt part of the books on any subject written by one author and reject others by the same author on the same subject. As before observed, there are few authorities from other states which can furnish any aid in construing our statute, but the supreme court of Michigan, in *Att'y Gen'l v. Detroit Bd. of Education,* 133 Mich. 681, 95 N. W. 746, placed the same construction on the statute there, although the language of the statute was not exactly the same. In *Campana v. Calderhead,* 17 Mont. 548, 44 Pac. 83, 36 L. R. A. 277, there is a note at page 279, which reads as follows:

"Under the Pennsylvania law there is no authority to adopt more than one series of books covering the same studies. But where there are several grades in the subject the books in the several sets need not all be by the same author. The different sets of the series may

50—87 KAN.

be by different authors if they are so arranged as to be uniform in the sets in which they are used throughout the district. *Francis v. Allegheny School Dist.*, 24 Pittsb. L. J. N. S. 19."

The question as to whether the books by different authors upon the same subject are so arranged as to permit them to be used connectedly is a question to be determined not by the courts but by the State Textbook Commission, which the legislature has created for that purpose, giving the commission the power to use their discretion in the selection of the series.

The demurrer is sustained and the writ denied.