WALTER A. HOXSIE *vs.* JOHN H. EDWARDS.

WASHINGTON—JULY 26, 1902.

PRESENT : Tillinghast, Wilbur, and Rogers, JJ.

(1) *Elections. Statutes. Directory and Mandatory. Notices.*

Gen. Laws cap. 9, § 12, requiring notices of district meetings to be given by posting the same in two or more public places in each district, is directory and not mandatory. The purpose of the notification is to give notice to the electors of the time, place, and object of the meeting ; but an omission to follow the statutory mode of notice will not render the election void, if the electors have actual notice and take part in the election.

(2) *Annual Town Meeting. Custom.*

From time immemorial, with the exception of the year 1901, the first Tuesday in June had been the election day for town officers in the town of Ex-

eter. In the year 1901 the time for the annual election was fixed by the town council for the second Tuesday of June, by virtue of Pub. Laws cap. 887, § 2, that time being fixed because the annual town meeting for laying a tax fell as usual on the first Monday of said month. Subsequently the time for holding the financial meeting was changed. In the year 1902 the annual meeting for the election of town officers was held upon the first Tuesday in June. Upon the republican ballots for town officers for the year 1901, used in both districts of said town, the printed statement appeared: "Election of town officers, first Tuesday in June, annually." Nothing relating to said time was put upon the democratic ballot or other ballots used at that election, and the ballots cast by the republicans outnumbered those which were cast by any other party :—

*Held*, that the time for the holding of said meeting was fixed by law, or by a custom which, from its immemorial existence, had the force of law, and in accordance with the intention of the electors, as clearly appeared from their ballots.

(3) *Elections. Moderators. Disfranchisement of Electors.*

Electors of a voting district are not disfranchised so as to render the election void by reason of the refusal of the moderator to open the meeting or allow the electors to vote. In such case it is the right of the electors to elect a moderator in his stead and proceed with the election. Electors who fail to exercise this privilege cannot be heard to complain of the result of the election.

(4) *Elections. District Meetings. Place of Meeting.*

Gen. Laws cap. 9, §§ 4, 9, as amended by Pub. Laws cap. 808, § 8, provide that a meeting of the electors of every voting district shall be held annually on the Tuesday next after the first Monday in November, at a place to be designated by the town council, if none shall have been designated by a former district meeting, for the purpose of voting for such officers as are to be chosen and for organization. Such meeting shall fix the place of their future meetings.

February, 1901, the town of Exeter was divided into voting districts, and thereafterwards the town council designated the place in each of said districts for holding the first meeting. Said meeting was held June 11, 1901, which was the time fixed for the annual election of town officers in said town that year. The same polling places were used in the annual election of State officers in November, 1901, and no action was ever taken by the electors of said districts to designate the places for the holding of future meetings. The meetings for the election of town officers were held June 3, 1902, at the same places :—

*Held*, that said places designated by the town council continued to be the places fixed by law until changed by the electors of said districts.

PETITION in nature of *quo warranto*. Heard on petition and answer, and relief granted.

TILLINGHAST, J. This is a petition in equity in the nature

of *quo warranto* under the statute, Gen. Laws R. I. cap. 263, and is brought for the purpose of determining whether the complainant or the respondent now lawfully holds and is entitled to hold the office of town clerk of the town of Exeter.

The petition sets out that at the regular annual election held in said town on the 3d day of June, 1902, seventy-four ballots were cast for the petitioner for the office of town clerk, and that no ballots were cast for any other person therefor ; that the town council of said town thereafterwards counted the ballots cast at said election, and declared the petitioner to be duly elected town clerk of said town, and that he has duly qualified for said office. It also sets out that John H. Edwards of said town, who was the town clerk thereof until the election and qualification of the petitioner, but now having no lawful title to said office, now holds and usurps the same to the exclusion of the petitioner, and holds possession of the town records, safes, town seal, and all the other appurtenances of said office, and refuses to surrender the same to the petitioner.

He therefore prays that the respondent may be ousted from said office and be ordered and directed to surrender to the petitioner the possession of said records and appurtenances.

The answer of the respondent denies that any election was held in said town on the 3rd day of June, 1902. It also denies that the town council of said town has duly declared that the petitioner has been elected to said office, or that the respondent wrongfully usurps and holds said office ; but on the other hand alleges that he, the respondent, now lawfully holds the same by virtue of his lawful election thereto on the 11th day of June, 1901, at the district meetings then lawfully held in said town, and that, in consequence of there having been no election of town officers for the year 1902 in said town, he now holds over as said town clerk, under Gen. Laws R. I. cap. 39, § 19.

He also sets up that the election held on the 3d day of June, 1902, was illegal and void for the following reasons, viz.: (1) because the places of holding the district meetings were not fixed upon by the electors of said districts agreeably

to the provisions of Pub. Laws R. I. cap. 808, §§ 8 and 9 ; (2) because said district meetings were not duly notified according to law by the town sergeant ; (3) because, in consequence of the uncertainty as to the place of meeting in said voting districts, and of the defective character of said notices, the polls in voting district No. 1 were not opened, and, in consequence of a want of due notice of the time and places of holding said meetings, but a minority of the qualified electors of said district No. 2 were present where the polls were opened and a pretended election was held ; and (4) because, in consequence of said irregularities and unlawful proceedings, the qualified voters of said town did not have a full, fair, and legal opportunity to give expression to their choice for a town clerk on said 3rd day of June, 1902.

The answer further sets up that the number of voters in said town on the 3rd day of June, 1902, was about two hundred and fifty, of which number about one hundred and fifty-three reside and vote in voting district No. 2.

He therefore prays that said petition be dismissed.

The facts in the case, in so far as they are material to the question presented for our decision, are substantially as follows :

In February, 1901, the town of Exeter was divided into two voting districts, Pub. Laws R. I. cap. 887 ; and thereafterwards the town council of said town duly designated the place in each of said voting districts for the holding of the first meeting thereof as required by section 2 of said chapter.

Said first meeting was held on the 11th day of June, 1901, which was the time fixed for the annual election of town officers in said town in that year. The secret ballot system has not been adopted by said town.

At the general election for State officers, members of the General Assembly, etc., held in November, 1901, the same polling places were used as had been designated as aforesaid, the electors in both of said districts having failed to take any action by way of designating the places for voting therein. And no action has been taken by said electors, up to the present time, by way of designating places for the holding of dis-

trict meetings in said town.   On the 17th day of May, 1902, the town clerk of said town duly issued his warrant to the town sergeant, requiring him to warn the qualified electors of each of said voting districts to meet in district meetings at the places which had been designated by the town council as aforesaid, on the 3rd day of June, 1902, at nine o'clock, A. M., for the purpose of giving in their ballots for town clerk, town council, town treasurer, justices of the peace, one assessor of taxes for three years, one member of the school committee for three years, town sergeant and district officers, and a moderator to preside in all meetings of the town, and for the transaction of such other business as might lawfully come before said meetings, by posting up two or more notifications thereof in public places in each of said districts at least seven days before said meeting.

Said 3rd day of June, 1902, fell on the first Tuesday of that month.   And the evidence shows that from time immemorial, with the exception of the year 1901, the first Tuesday in June has been the election day for town officers in said town.   So that it is to be presumed that that was the time fixed by law, or by some vote or by-law of the town, long ago, for the holding of the annual election in said town.   Moreover, upon the republican ballots for town officers for the year 1901, used in both of said districts, the following printed statement appears, namely : "ELECTION OF TOWN OFFICERS, *First Tuesday in June annually.*"   Nothing relating to said time was put upon the democratic ballot or other ballots used at that election, and the ballots cast by the republicans outnumbered those which were cast by any other party.

(2)     The time for the annual election in 1901, namely, June 11th, which fell on the second Tuesday in June of that year, was fixed by the town council by virtue of said section 2 of chapter 887, as aforesaid, that time having been so fixed because the annual town meeting for laying a tax and doing other town business outside of the election of town officers fell, as usual, on the first Monday of said month.   And the town having then been divided into voting districts, the annual election could not be held in connection with the trans-

acting of said business. Since the holding of said financial or business town meeting on said first Tuesday in June, 1901, the time for the holding of similar meetings has been changed so as not to fall upon the first Tuesday in June, thereby preventing any further interference with the holding of district meetings on the first Tuesday in June hereafter, as said town meetings have always heretofore been held, with the exception aforesaid.

In posting the notices the town sergeant made this mistake : He posted two notices in district No. 1, but one of these notices was intended for district No. 2, and should have been posted in the last-named district. He made a similar mistake in posting the notices in district No. 2 ; that is to say, while he posted two notices in public places in each of said voting districts, one of said notices in each case was posted in a district to which it did not strictly relate. In each of the notices posted the place designated for the holding of the district meeting in the district to which it referred was clearly and distinctly given, as was also the day and hour fixed upon for the holding thereof, together with the purpose for which the meeting was to be held. The election for which said warrant was issued was the annual election for town officers in said town.

At the time fixed for the opening of the polls in district No. 1 on the day fixed for the holding of said election, quite a number of voters were present at the place designated as aforesaid, amongst whom were Everett Brown, who was the moderator, and Stephen Sweet, who was the clerk, of said district. The clerk read the warrant calling the meeting, whereupon the moderator ruled that the notice calling the meeting was wrong, and therefore declared that he would not open the polls. But at the same time he informed the voters who were present that it was their privilege to elect a moderator *pro tem.*, and go on with the meeting if they so desired. One elector, at least, who was present, demanded the right to vote, but was refused by the moderator on the ground aforesaid. It also appears that all of the electors who were present, numbering about thirty, wanted to vote, but that

by reason of said ruling on the part of the moderator, and of their failure to elect a moderator *pro tem.*, they were unable to do so.

After some talk about electing a moderator *pro tem.*, the voters dispersed, and no votes were cast in the district on that day.

In district No. 2, after the warrant was read by the respondent, who was the clerk of said voting district, he declined to further act as such clerk, on the ground that he considered the meeting to be an illegal one, for the reason aforesaid; whereupon a clerk *pro tem.* was duly elected, the polls were opened, and all electors who desired to do so within the time fixed for keeping the polls open were permitted to vote.

The result of the voting in that district was that the petitioner, Walter A. Hoxsie, received seventy-four votes for the office of town clerk, and that no votes were cast for any other person for that office.

The main question which arises, in view of the foregoing facts, is whether said district meetings were duly notified. Or, rather, to be more specific, whether the electors of said town were legally notified of the time and place for the holding of said meetings.

The answer to this question depends mainly upon the construction to be put upon the statute, Gen. Laws R. I. cap. 9, § 12, which requires notices of district meetings to be given by posting the same in two or more public places in each district. If this provision is to be strictly construed—that is, if it is mandatory in its requirements as to notice in its application to the case at bar—then the notice given was insufficient, and the meetings held in pursuance thereof were illegal; but if, on the other hand, said provision is not to be strictly construed—that is, if it is directory merely and not mandatory in its application to this case—then the notice given was sufficient, and the meetings held in pursuance thereof were legal. Of course, it is essential in all cases that the electors should have notice of the time, place, and object of the election which is to be held; that is, they should have knowledge of them. But an omission to follow the particular mode provided by

statute for giving such notice may not render the election void, and will not if the electors have actual notice and do in fact take part in the election.    McCrary on Elections, § 116. This doctrine was laid down very broadly by the Supreme Court of Iowa in *Dishon* v. *Smith*, 10 Ia. 212, in the following language :    "The courts have held that the voice of the people is not to be rejected for a defect or even a want of notice if they have, in truth, been called upon and have spoken. In the present case, whether there were notices or not, there was an election, and the people of the county voted ; and it is not alleged that any portion of them failed in knowledge of the pendency of the question, or to exercise their franchise." In McCrary, *supra*, at section 117, the author says :    "It is doubtless perfectly true that where the election has been held at the proper time and the proper place, and the electors have had notice and participated in it, the want of such notice as the law provides will not render it void.    But if it appear that due notice has not been given, and that a portion of the electors have been thereby deprived of their right to vote, and particularly if the number thus deprived is sufficient to have changed the result if they had voted, on one side or the other,—in such a case the election is clearly void."    The same author also says that :    "If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute, must so hold, whether the particular act in question goes to the merits, or affects the result of the election or not.    Such a statute is imperative, and all considerations touching its policy or impolicy, must be addressed to the legislature.    But if, as in most cases, the statute simply provides that certain acts or things shall be done within a particular time, or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election.    Those provisions which affect the time and place of the election, and the legal qualifications of the electors are generally of the substance of the election,

while those touching the recording and return of the legal vote received, and the mode and manner of conducting the mere details of the election, are directory. *People* v. *Schermerhorn*, 19 Barb. 540. The principle is that irregularities which do not tend to affect the results are not to defeat the will of the majority ; the will of the majority is to be respected even when irregularly expressed."

In 10 Am. & Eng. Ency. of Law, 2nd ed., 632, the law is briefly stated as follows : "Defects in posting or publishing notices of an election will not vitiate the election, if they were immaterial and did not affect the result; a substantial compliance with the statute being sufficient." This statement of the law is well sustained by the authorities. See *People* v. *Avery*, 102 Mich. 572 ; *State* v. *Doherty*, 16 Wash. 382 ; *Demaree* v. *Johnson*, 50 N. E. Rep. 376 ; *Mintzer* v. *Schilling*, 117 Cal. 361 ; Paine on Law of Elections, § 384, clause 2.

In short, the rule of construction in determining whether a statute like the one in question is mandatory, or only directory, as gathered from many authorities, is that stated in *Jones* v. *State*, 1 Kan. 279, and approved in *Gilleland* v. *Schuyler*, 9 Kan. 569, namely : "Unless a fair consideration of the statute shows that the legislature intended compliance with the provisions in relation to the manner to be essential to the validity of the proceedings, it is to be regarded as directory merely."

As a similar question to that here involved was very fully considered by this court in *State* v. *Carroll*, 17 R. I. 591, and a similar conclusion arrived at, we do not feel called upon to further discuss the matter.

(1)     We therefore decide that the statutory requirement relating to the posting of notices in said districts was directory and not mandatory, and that the election in question was not illegal or void by reason of the mistake of the town sergeant in posting them.

In this connection it is pertinent to remark that, so far as appears from the evidence produced at the trial, no voter in either of said districts was deceived or misled by reason of said mistake, nor does it appear that any voter failed to see

or understand said notices.   The meeting to be held was the
annual one for the election of town officers in said town, the
time for the holding thereof was fixed by law, or, at any
rate, by a custom which, from its immemorial existence, had
the force of law, and in all probability was first established
by a vote or by-law of said town.   It was also held at the
time designated on a large part of the ballots which were
cast at the next preceding annual election in said town for
town officers, which designation, while perhaps it did not have
the force of a formal vote, yet it clearly showed the intention
of the electors, upon whose ballot it appeared, to continue to
hold the annual election thereafter for town officers on the
first Tuesday in June, as it had always theretofore been held,
with the exception aforesaid.

In view of these facts the case is very different from what
it would have been if the election in question had been a special
instead of an annual one.   See McCrary on Elections, § 120.

(3)     But counsel for respondent contends that the election held
was illegal and void, on the further ground that all of the
electors in voting district No. 1 were disfranchised.   If this
were in fact true, the case would present a very different as-
pect.   But we do not find that it is.   It is true that the mod-
erator of that district advised the voters present that the meet-
ing was illegal for want of proper notice, and refused to open
the polls and allow them to vote.   But that he thereby dis-
franchised the electors of that district, or any one of them,
by no means follows.   Upon his refusal to act in his official
capacity, the right of the voters present to immediately elect
some one else to act in his stead as moderator of the meeting,
and also to elect a clerk in place of the then clerk, Stephen
C. Sweet, who also refused to act, was perfectly clear.   In-
deed, the moderator himself suggested the election of some
one to act in his place, and a movement in this direction was
talked of by those present, but no formal action was taken.
It frequently happens in elective meetings that for some rea-
son the moderator thereof, whose duty it is to be present and
act in such capacity, is either absent or unable to serve.   And
it is a matter of common knowledge that in all such cases it

is competent for the electors to fill his place by the temporary election of another person.    Gen. Laws R. I. cap. 9, § 9, expressly provides that : "Should the moderator not attend any meeting, the clerk shall preside until a moderator for the time being shall be chosen."    And section 10 provides that : "Should the clerk not attend any meeting, the moderator shall call for an election of clerk for the time being, and shall discharge the duties of clerk until such election."    If the moderator is present but refuses to act, of course his place may be filled in like manner as if he were absent ; and the same is also true of the clerk.    If this were not so, it would be in the power of a petty official of this sort to disfranchise the voters of an entire town or city by simply refusing to open the polls in a given district, and thereby defeat an election. But that no such power exists, and that our system of town government does not rest upon any such insecure foundation as the mere whim, caprice, opinion or will of any individual official, whatever his rank may be, is too well settled to require argument.    Voters, when legally assembled for the purposes of an election, have the right to vote ; and if they properly assert this right, no slight incidental interference therewith, such as the mere refusal of a moderator or clerk to discharge his duty in the premises, can deprive them of this right.

In the case at bar, therefore, it is clear that the voters of district No. 1 were not disfranchised by the action of the moderator or of the clerk, or of both of them together.    They could readily have voted if they had insisted on doing so, but they did not ; and hence they have no reason to complain of the result.    Indeed, so far as appears, they do not complain thereof, but are willing to acquiesce in the result of the voting which took place in the other district.    And in this connection it is pertinent to remark that, so far as the evidence shows, the only candidate before the people at said election for the office of town clerk was Walter A. Hoxsie, the petitioner.    So that it is fair to assume that, even though the electors of district No. 1 did not express themselves at the polls, their will in the premises has not been defeated.

(4)    Another ground relied upon by counsel for respondent is
that, as the places at which said meetings were held had never
been fixed by the electors of said voting districts, as required
by statute, the meetings in question were illegal, and conse-
quently that the election was also illegal and void.

Gen. Laws R. I. cap. 9, § 4, as amended by Pub. Laws cap.
808, § 8, provides as follows :   "A meeting of the electors of
every such district shall be annually held on the Tuesday next
after the first Monday in November at nine o'clock in the
forenoon, at a place to be designated by the town council if
none be designated by a former district meeting, for the pur-
pose of organization and of voting for such officers as are to
be chosen on that day."   Section 9 provides that : "The clerks
shall keep a record of the proceedings of the meetings in their
several districts and, after a choice of officers in their several
districts, shall in writing, duly certified, notify the town clerk
thereof ; and the meeting held on said Tuesday next after the
first Monday in November shall fix upon the place of their
future meetings, and the district clerks shall severally give
notice to the town clerk of the place so appointed."

While it is true that at the meetings of said districts held
in November, 1901, no action was taken regarding the fixing
upon the places of their future meetings as thus required, yet
we are clearly of the opinion that such failure did not have the
effect to render the meetings now in question illegal.   The
places for the holding of the first meetings of said districts
having been legally fixed by the town council, and the same
places having been used at the second election held in said
town in November of the same year, and no action having
been taken by the electors in district meetings to change said
places, it is to be inferred that the electors were satisfied with
the places so designated, and hence took no steps to change
the same.   Indeed, we do not think it is going too far to say
that, by using said voting places at the November election
and failing to take steps at that time to change the same, the
electors practically adopted and ratified the action of the
town council in designating them.   At any rate, they acqui-
esced therein ; and we fail to see how any elector who took

part in said meetings, as the respondent did in one of them, and failed to take any steps in relation to the fixing of places for future meetings, can now be heard to question the legality of the meetings held on the first Tuesday in June, 1902.

But in any event, we are of the opinion that said places continued to be the places fixed by law, or in pursuance of law, which is the same thing, until changed by the electors of said districts.

Finally, we therefore decide that the time and places for the holding of said district meetings having been fixed by law, or in pursuance of law, and notice having been given of the holding thereof in manner aforesaid, and the petitioner having received all of the votes cast for the office of town clerk, he was duly and legally elected to that office, and hence is entitled to the relief, or order, prayed for in his petition.

Decree accordingly.

*P. Henry Quinn*, for petitioner.

*Ezra K. Parker*, for respondent.