J. C. McNees, et al., Appellants, v. School Township of East River, County of Page, Iowa, K. G. Herron, James Keeley, B. J. Bashor, N. Cline, A. A. Linebaugh, W. H. Sleight, Henry Willison, S. W. Kelley, W. J. Carpenter, Siegel Baker, Harley Burley, John Dougherty, S. D. Morgan, and Rube Brown, Directors.

School elections: SUBMISSION OF SPECIAL QUESTIONS. The statute requires that any particular question which the electors of a school district are authorized to vote upon shall be submitted upon the order of the school board; and an election held upon notice issued by the clerk without an order of the board is invalid, although the individual members may have directed him to call the election.

Selection of text books. The action of a school board in selecting text books and awarding contracts, without first advertising for bids as required by statute, is void not only as to the contract, but as to the selection also.

*Appeal from Page District Court.*— Hon. A. B. Thornell, Judge.

Friday, January 18, 1907.

Action to enjoin a change in the text-books used in East River school township. The petition was dismissed, and plaintiffs appeal.— *Affirmed.*

*B. I. Salinger, Junkin & Pringle,* and *D. G. Sutherland,* for appellants.

*N. T. Guernsey, William Orr,* and *H. E. Parslow,* for appellees.

Ladd, J.— This is a suit to enjoin the directors of the school township of East River, Page county, from changing

the text-books used in the several schools thereof. The plaintiff contends that such change was not legally submitted to the electors at the annual election of March 14, 1904, while defendants assert with equal confidence that the books now in use were not legally adopted. Both are right. On March 1, 1904, a petition to the board of directors, requesting that the proposition to change text-books be voted upon at the approaching annual election be incorporated in the notice therefor, and purporting to be signed by ten voters, was filed with the secretary of the school township. No action was taken by the board of directors. At a former meeting they had agreed that, if such a petition should be filed, the secretary might " go ahead," and by telephone so advised him thereafter. He posted the notices, including a statement that the question of making such change would be submitted. Of the two hundred and thirty-one electors residing in the school township fifty-two voted — thirty-eight for the change and fourteen against. Section 2829 of the Code prohibits any change in the text-books adopted within five years, " unless authorized to do so by a majority of the electors present and voting at their regular annual meeting in March, due notice of said proposition to change or displace said text-books having been included in the notice for the said regular meeting." Section 2746 requires that the notice of the annual election, among other things, shall specify " such propositions as will be submitted to then be determined by the voters," and section 2749 confers the power upon voters at any annual election (1) " to direct a change of text-books regularly adopted." Then follow six other matters, such as the disposition of school property, fixing the branches to be taught, the use of school property, and the like, not necessarily involved in the ordinary management of the schools. It is then provided that " the board may, or, upon the written request of five voters of any rural independent district or of ten voters of any school township . . . shall provide in the notice for the annual

meeting for submitting any proposition authorized by law to the voters. All propositions shall be voted upon by ballot in substantially the following form: ' shall a change of text-books be directed ? ' (or other questions as the case may be) ; and the voter shall designate his vote by writing the word ' yes ' or '.no ' in an appropriate place on the ballot." No authority is conferred upon the secretary .or upon the members of the board acting individually to submit any proposition to the people.

Manifestly, action on the part of the board is required to the end that it shall determine (1) whether the requisite number of persons have signed the petition, and (2) whether

1. School ELECTIONS: submission of special questions.

these are voters of the district. *Munn v. School District,* 110 Iowa, 652; *Ryan v. Varga,* 37 Iowa, 78; *Bennett v. Hetherington,* 41 Iowa, 142. True, as contended by appellee, the board would have been required to have submitted the proposition had it found the petition signed by ten voters of the district as provided by statute, but this did not deprive it of the sole authority to order the proposition submitted to the electors, nor, on the other hand, did it validate the usurpation of such authority by the secretary. Counsel for appellee rely on authorities declaring statutory requirements of notice of a general election directory. *People v. Avery,* 102 Mich. 572 (61 N. W. 4); *Hoxsie v. Edwards,* 24 R. I. 338 (53 Atl. 128); *Adsit v. Secretary of State,* 84 Mich. 420 (48 N. W. 31, 11 L. R. A. 534; *Demaree v. Johnson,* 150 Ind. 419 (50 N. E. 376). And on others holding that special elections may be valid in the absence of proper notice where it has been held and all the electors have voted. *Dishon v. Smith,* 10 Iowa, 212. See *Ford v. Town of North Des Moines,* 80 Iowa, 626. Neither point is involved in this case, for less than one-fourth of the electors voted and notice was given. The point here involved is whether the vote on a particular question of which notice has been given is valid where the order for the submission of such question required

by statute to be made by the board of directors has never been considered or adopted by that body. The Legislature evidently intended that questions such as are enumerated in section 2749 of the Code should be submitted to the electors of the school township upon the order of the board of directors providing therefor, and not otherwise. The mere fact that conditions were such that an order must necessarily have been entered does not shift such responsibility of passing on such conditions to the secretary. The case is like the calling of a special election by a clerk when the statute requires it to be done by the town or city council, uniformly held to be illegal. *Jacksonville, etc., Ry. Co. v. Town of Virden,* 104 Ill. 339. Or the fixing a place of an election by the clerk in his notice when this is required to be done by the council. *People v. Gochenour,* 54 Ill. 123. As the question as to change in text-books was included without the authority of the board of directors, the vote thereon was of no effect.

II. Even though the vote of the electors to change the text-books was of no validity, because not ordered by the board of directors, it does not follow that plaintiffs are entitled to the relief demanded. They base their claim on the action of the board of directors at a special meeting August 21, 1903, " for the purpose of adopting text-books for the term of five years." When the following proceedings were had " motion by S. W. Kelly seconded by J. M. Kelly that we accept all the books in full. Carried." Then followed a list of the books. " Motion by Linebaugh and seconded by S. W. Kelly that we adopt and purchase books at once. Carried." The board then designated the secretary to handle the books, and immediately entered into contracts of purchase with Maynard, Merrill & Co., D. C. Heath & Co., and Rand, McNally & Co., fixing the net contract and exchange prices of each book to be used by the district, and bonds were given by these firms as contemplated by statute. The board was proceeding on the theory that it might not only adopt, but con-

2. SELECTION OF TEXT BOOKS.

tract for the purchase of, text-books without advertising for bids. Appellants insist that notwithstanding this, and though the contracts were illegal, it was authorized to determine what books should be used in the schools of the township without advertising that this would be done, and to this extent the action of the board should be sustained. If this be so, then all competition in the matter of purchasing text-books and any benefit to be derived from advertising for bids to furnish the same may be defeated by the action of the board, for, as in this case, it may adopt those books which are copyrighted and published by one firm or company only, and as a result the school township be placed in a situation where it will be compelled to pay prices such as the publishers chose to name. A construction which would lead to such a result ought, if possible, to be avoided, and this is necessary if heed be given to the intent of the Legislature as gathered from the different sections of the chapter in pari materia. Section 2824 of the Code merely confers the power to adopt and purchase text-books upon the board of directors, while section 2828 directs the manner in which this shall be exercised. The first section mentioned reads:

The board of directors of each and every school corporation in the State of Iowa is hereby authorized and empowered to adopt text-books for the teaching of all branches that are now or may hereafter be authorized to be taught in the public schools of the State, and to contract for and buy said books and any and all other necessary school supplies at said contract prices, and to sell the same to the pupils of their respective districts at cost, and said money so received shall be returned to the contingent fund. The books and supplies so purchased shall be under the charge of the board, who may select one or more persons within the county to keep said books and supplies for sale, and, to insure the safety of the books and moneys, the board shall require of each person so appointed a bond in such sum as may seem to the board to be desirable.

The next section provides for payment of the books and other supplies out of the contingent fund, and that following has relation to the exchange of the books in use. Section 2827 directs suit on the bond required for the benefit of the public in certain contingencies, and section 2828 exacts that:

Before purchasing text-books under the provisions of this chapter, it shall be the duty of the board of directors, or county board of education, to advertise, by publishing a notice for three consecutive weeks in one or more newspapers published in the county: said notice shall state the time up to which all bids will be received, the classes and grade for which text-books and other necessary supplies are to be bought, and the approximate quantity needed; and said board shall award the contract for said text-books and supplies to any responsible bidder or bidders offering suitable text-books and supplies at the lowest prices, taking into consideration the quality of the material used, illustrations, binding, and all other things that go to make up a desirable text-book; and may, to the end that they may be fully advised, consult the county superintendent, or in case of city independent districts, with city superintendent or other competent person, with reference to the selection of text-books; provided that the board may reject any and all bids, or any part thereof, and re-advertise therefor as above provided.

It will be observed that the contract is to be awarded to responsible bidder or bidders " offering suitable text-books at the lowest price," and in determining this the board is to take into consideration, not only the quality of material used, but the " illustrations, binding and all other things that go to make up a desirable text-book." Moreover, to become fully advised, they may consult the county superintendent with reference " to the selection of the text-books." Plainly, then, they are to choose between text-books in passing upon the bids, and this necessarily involves the adoption of those to be used. That this was the thought of the Legislature further appears from section 2830 of the Code, providing

that " any person or firm desiring to furnish books and supplies under this chapter in any county shall at or before filing his bid hereunder, deposit in the office of the county superintendent samples of all text-books included in his bid, accompanied with lists giving the lowest wholesale and contract prices for the same." While section 2828 requires advertising " before purchase," the context clearly indicates that the adoption of text-books to be used is to be made at the time the contract of purchase is entered into. Section 2824 is not inconsistent with this construction, for, as said, it merely empowers the board of directors to adopt and to purchase without indicating the manner of doing so. No argument is required in support of the proposition that the adoption of the text-books to be used is quite as important as the price to be paid, to the end that the most suitable selection shall be made. An opportunity is afforded those desiring to introduce their books into the schools of the township to present them for the examination of the board and for comparison with the books of other publishers. Even then the directors, because of inexperience in such matters, may find difficulty in deciding, and, for this reason, those submitting bids are required to file copies of all books proposed to be furnished with the county superintendent, that such directors may have the advantage and assistance of that officer in choosing the books best adapted to the needs of the schools of the particular township. The authorities cited by appellant are not inconsistent with this construction, and were evidently cited in support of the proposition that after the legal adoption of text-books they may not be changed within the statutory period. See *State v. Board,* 35 Ohio St. 368; *State v. State Board,* 18 Nev. 173 (1 Pac. 844); *People v. State Board,* 49 Cal. 684; *Atty. Gen. v. Board,* 133 Mich. 681 (95 N. W. 747); *American Book Co. v. McElroy* (Ky.) 76 S. W. 850.

As notice was not published as required by section 2828 of the Code, neither the adoption nor purchase of text-books

by the board of directors on August 21, 1903, was valid, and the temporary writ of injunction was rightly dissolved. This conclusion renders it unnecessary to pass upon the motion to strike the evidence from the abstract, and, as the statute relating to completing the record in equity causes has been changed, no purpose will be served by a discussion of the question presented.— *Affirmed.*