GAINES v. BALTIMORE & C. S. S. CO.

(District Court, E. D. South Carolina. July 26, 1916.)

1. COURTS ⬤═➾280—JURISDICTION—OBJECTIONS—NECESSITY OF RAISING.

Where a suit in a federal court for mandatory injunction involved public questions, the court may on its own motion, though not urged by defendant, raise the questions whether the amount in controversy was within its jurisdictional limit and whether complainant had an adequate remedy at law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 816–818; Dec. Dig. ⬤═➾280.]

⬤═➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. INJUNCTION** ☞5—ISSUANCE—MANDATORY INJUNCTION.

A mandatory injunction will not ordinarily be issued to require defendant to perform some act which exposes it to prosecution for violation of criminal laws; such injunctions usually being issued only to compel defendant to do some act which will restore the status quo.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 4; Dec. Dig. ☞5.]

**3. CONSTITUTIONAL LAW** ☞70(3)—WISDOM OF LAW—JUDICIAL REVIEW.

The wisdom of a sumptuary statute regulating the acquisition of intoxicating liquors is not a question for the court.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 131; Dec. Dig. ☞70(3).]

**4. INJUNCTION** ☞5—MANDATORY INJUNCTION—VALIDITY OF STATUTE.

Act S. C. Feb. 20, 1915 (29 St. at Large, p. 140), regulating shipments of intoxicating liquors into the state, forbids the delivery to any person by any carrier into the state of more than one gallon of intoxicating liquors during any calendar month. Webb-Kenyon Act March 1, 1913, c. 90, 37 Stat. 699 (Comp. St. 1913, § 8739), prohibits the shipment or transportation of intoxicating liquors from one state into another where such liquors are intended to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such state wherein they are shipped. Complainant ordered from a point without the state a considerable quantity of intoxicating liquor, and on the carrier refusing to make delivery prayed a mandatory injunction requiring it. *Held* that, as complainant was not entitled to delivery of the liquor unless the South Carolina act be unconstitutional, as infringing some essential right which under the federal Constitution may not be infringed either by state Constitution or statute as it is not invalid as an interference with interstate commerce, an injunction will not by a court of the first instance be granted on the theory that such statute was invalid; that question being at least doubtful.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 4; Dec. Dig. ☞5.]

In Equity. Bill by W. F. Gaines against the Baltimore & Carolina Steamship Company. Bill dismissed.

George F. Von Kolnitz, Jr., of Spartanburg, S. C., for plaintiff.
Alfred Huger, of Charleston, S. C., for defendant.

SMITH, District Judge. The bill of complaint in equity in this case was filed on the 8th of July, 1916. The defendant has answered, and the case has come up for final hearing on the merits upon the pleadings and upon an agreed statement of facts. Counsel for both sides have appeared and the case has been duly heard. The bill of complaint is filed for the purpose of obtaining nominally an injunction against the defendant to enjoin it from interfering with any ales, beers, wines, or other intoxicating liquors imported into the state of South Carolina by the complainant. The pleadings and the facts, however, show that the complainant is a citizen of the state of South Carolina residing in Charleston, who purchased outside of the state of South Carolina a barrel containing an intoxicating liquor, viz., 60 pint bottles of beer, which was shipped on the steamboat of the defendant, to be transported from the city of Baltimore in the state of Maryland to the city of Charleston, the residence of the complainant. On its arrival in Charleston the complainant demanded of the carrier that the

carrier, the defendant, deliver to the complainant the barrel of beer, and this the carrier refused to do, on the ground that it was forbidden to make the delivery by the provisions of the statute of the state of South Carolina approved February 20, 1915, which forbids the delivery by any carrier to any person into this state of more than one gallon of any spirituous, vinous, fermented, or malted liquors in any calendar month.

[1] Upon the pleadings and the testimony there appear several, certainly two, questions of a preliminary character as to the jurisdiction of this court. The first is as to the amount in controversy, which depends upon the allegation and statement of the complainant that the value of the ale, wine, beer, and other liquors intended to be imported by him from other states hereafter for his own use and consumption exceeds the sum or value of $3,000, to which may be added the loss of the pleasure (whatever may be the value to him) of his individual consumption thereof. It is not contended that the value of this particular package in question, the delivery of which is refused, is $3,000, and it is a matter of serious doubt whether or not this court should hold that it can infer that the loss of the right to import liquors of the same character in the future for the individual consumption of the plaintiff could in the reasonable future amount in value to $3,000, or whether the loss of the pleasure of the consumption of intoxicating liquors by him individually should be valued at that sum. It may be that in an action at law, in which, in addition to the actual damages, there is sought to be recovered that intensification of the damages, termed exemplary or punitive damages, for the willful deprivation of the complainant of any innocent pleasure in life he was legally entitled to enjoy, there would be some foundation for placing the value of the amount in controversy at an amount so excessively above the value of the actual package or actual article, the detention of which deprived the plaintiff of his legal pleasure. The present case, however, is not an action at law, but a suit in equity, to enjoin the doing of certain specific acts, and in this case the specific act is the refusal to deliver a package of the character mentioned in the bill of complaint. It is very questionable whether in such a case this court will consider in estimating the value of the amount in controversy any exemplary or punitive damages.

The next preliminary question is whether or not the complainant has not got an adequate and complete remedy at law. It would not appear that there is anything to prevent the complainant under the Code of Procedure of the state of South Carolina from bringing an action of claim and delivery for the package in question, analogous to the common-law remedy of replevin, and by giving a proper bond, or carrying the cause to judgment, obtain his package of liquors. If, after once obtaining judgment in his behalf on the question of legal right, the defendant should continue arbitrarily to refuse to deliver packages of like character, the complainant could either sue in like manner for the recovery of the possession of such other packages, joining to his actual damages an application for punitive damages for the continued willful, malicious, and unlawful detention of

property belonging to the complainant, after an adjudication of his legal right thereto, or, the legal right having been adjudicated, he might then be in a position to claim the benefit of the equitable doctrine of a multiplicity of actions, so as to give him the enforcement in an equitable proceeding of the legal right already adjudicated. Even if neither of these questions are pressed by the defendant in this case, yet, where the jurisdiction of the court depends upon the existence of certain conditions, as does the jurisdiction of this court, it is incumbent upon the court, especially in a cause involving the adjudication of public questions, to see that those conditions exist, whether or not the parties to the cause may waive objection or acquiesce in the statement that those conditions do exist.

[2] In addition to this, it appears from the pleadings and agreed statement of facts that, although the bill of complaint nominally asks for an injunction, yet in effect the remedy sought is a decree of a mandatory character which will compel the defendant to perform an act which will subject it to criminal prosecution. Whilst a court of equity will mould its orders so as to suit the exigencies of the case, and in proper cases issue injunctions, commonly called mandatory injunctions, which will require action on the part of the defendant, in order to obtain the benefit to the complainant of the injunction asked, yet ordinarily such mandatory injunctions are confined to cases where it is necessary thereby to restore the status by requiring the defendant to do some act which will restore the parties to a status which existed before the act was done, and which, if the injunction had been asked for earlier, would have been granted, so as to prevent a change of that status by the defendant. It is very rarely, if ever, that a court of equity will grant a decree or order of this mandatory character, which will require the defendant to do an act, the doing of which will under the statutes of the jurisdiction subject the defendant to criminal prosecution.

[3, 4] Apart, however, from these grave preliminary questions, attaching both to the jurisdiction of the court as a federal court and as a court of equity, as well as to the exercise of the discretion of a court of equity, in the issuing of an injunction of the character asked for, there exists the question upon the merits that the complainant's right depends upon the court's declaring the statute of the state of South Carolina before referred to, approved the 20th day of February, 1915, and styled "An act to regulate the shipment of spirituous, vinous, fermented, or malt liquors or beverages into this state, and to provide penalties for the violation of this act," to be of no force and effect. The ground for its being declared invalid, as is contended for by the complainant, is that there is no law whatsoever which forbids a citizen of the state of South Carolina drinking or having in his possession spirituous liquors of an intoxicating character to any amount, provided if in his use of them he does not violate any law of the state of South Carolina, or commit any breach of the peace, or infringe upon any rights of his fellow citizens. This being, as the complainant contends, the law of the state of South Carolina, he further contends that the regulation of the importation and delivery of such liquors to citi-

zens of the state of South Carolina from places outside the jurisdiction is wholly a matter for congressional legislation, and in no statute passed by Congress has it forbidden the transportation of such liquors, and their delivery to citizens of the state for purposes not forbidden by the law of the state of South Carolina, such as for individual consumption. The statute of the state of South Carolina referred to expressly forbids any common carrier to transport from any point without the state of South Carolina 'and deliver to any person within the state of South Carolina any such liquors exceeding the quantity of one gallon within any calendar month. There is, therefore, an express statutory provision of the state of South Carolina forbidding a carrier to transport from without the state to a point within the state and there deliver to a person living in the state liquors of the character contained in the package mentioned in the bill of complaint to a quantity exceeding one gallon within any calendar month. If the carrier in this case made the delivery which it is sought to have him compelled to make by the bill of complaint, he would subject himself under the terms of this statute to a prosecution for fine or imprisonment for an infraction of the law of the state.

The statute of Congress commonly known as the Webb-Kenyon Act, approved March 1, 1913, declares that the shipment or transportation in any manner or by any means of any spirituous, vinous, malted, fermented, or other intoxicating liquors from one state, territory, or District of the United States into any state, territory, or District of the United States, of such spirituous, vinous, malted, fermented, or other intoxicating liquors, intended to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such state, territory, or District of the United States, is prohibited. The question on this statute would be whether the liquor transported by the defendant from the city of Baltimore to the state of South Carolina, to be there delivered to a citizen of the state of South Carolina, was to be received, possessed, or in any manner used in violation of the statute of the state of South Carolina; that is, whether the words "receive, possess or use," would apply to the act of delivery by the carrier, as well as to the reception and possession by the party to whom it was delivered in any way as accepted by him in a quantity in excess of the amount permitted by the statute. In the case of State of West Virginia v. Adams Express Co. (decided by the Circuit Court of Appeals of this circuit on January 13, 1915) 219 Fed. p. 794, 135 C. C. A. 464, that tribunal practically decides that the Webb-Kenyon Act applies to a delivery by the carrier at the place of destination of such liquors in contravention of the law of the state of destination, and upholds it as having that effect. The case of Adams Express Co. v. Kentucky (decided by the Supreme Court of the United States, June 14, 1915) 238 U. S. p. 190, 35 Sup. Ct. 824, 59 L. Ed. 1267, Ann. Cas. 1915D, 1167, decides that the Webb-Kenyon statute applied only when the liquor shipped is to be dealt with in violation of the law of the state into which it is shipped, and where there was no law of the state of Kentucky which forbade the delivery of liquor to any extent to a person for personal

use, that it did not appear, therefore, that the shipment of liquor in that case was to be used in violation of laws of that state, and the Webb-Kenyon Act had no effect to change the general rule, that the state could not regulate commerce which is wholly interstate. The statute of the state of South Carolina, however, contains a provision which apparently was not contained in the Kentucky statute, limiting the quantity of liquor which may be delivered to a consignee, and if the state has the power to limit the quantity of liquor which within its jurisdiction can be delivered to a consignee, then under the reasoning of both of these cases the Webb-Kenyon statute would apply in this case, and the provision of the statute of South Carolina would be of force.

This would leave the question to turn upon the constitutionality of the statute of South Carolina, and not upon the application to the state of facts disclosed in this cause of the provisions of the Webb-Kenyon Act. The constitutionality of the act of South Carolina complained of would, under the elimination of all questions, depend upon the right of the state to restrict or inhibit the consumption of intoxicating liquors by its citizens. In the case from Kentucky the Court of Appeals of Kentucky held that:

"The declaration under its Bill of Rights, which declared that among the inalienable rights possessed by the citizens is that of seeking and pursuing their safety and happiness, and that the absolute and arbitrary power over the lives, liberty, and property of freemen exists nowhere in a republic, not even in the largest majority, would be but an empty sound if the Legislature could prohibit the citizen the right of owning or drinking liquor, when in so doing he did not offend the laws of decency by being intoxicated in public. * * * Therefore the question of what a man would drink, or eat, or own, provided the rights of others is not invaded, is one which addresses itself alone to the will of the citizen. It is not within the competency of government to invade the privacy of a citizen's life, and to regulate his conduct in matters in which he alone is concerned, or to prohibit him any liberty, the exercise of which will not directly injure society."

Whether in the view of this interpretation of the inalienable rights of the freemen of a republic this statute of South Carolina is constitutional under the Constitution of the state of South Carolina is a matter for the decision of the Supreme Court of the state of South Carolina. The statute is not in terms a total prohibition of the consumption of intoxicating liquors, but a limitation of the amount of intoxicating liquors which can be imported or possessed. The question of its constitutionality under the state Constitution is, however, not a federal question, unless the state Constitution itself, if the act be thereunder constitutional, would by authorizing the statute infringe upon any of the rights which under the terms of the federal Constitution the respective states may not invade. The wisdom or folly of such sumptuary laws is not for the court. The only question for this court would be, assuming that the statute of the state of South Carolina bore the interpretation that it was intended to forbid the consumption by a free citizen of the state of South Carolina of liquor, when in so doing he neither offended the laws of decency nor exercised any act which infringed the rights of others or directly injured society, Is it an infringement upon those essential rights which under the terms of the federal

Constitution may not be infringed either by a state Constitution or a state statute?

On that point it may be said to be a matter of doubtful law as at present existing. This, however, is a court of first instance, and the general rule is that a superior court of first instance will not in doubtful cases declare a statute of the state or of the United States unconstitutional, except where it is imperatively called for, for the relief of the individual, where his life or his liberty or the possession of his property is threatened or invaded. Where an individual is confined, and deprived of his liberty, or threatened with execution for alleged crime, or about to be deprived of the possession of his property, or of any of the vital essential rights to the enjoyment of life in a free country, the court, although only a court of first instance, will not hesitate, and indeed is bound, to go to his relief, and, if necessary, declare unconstitutional any statute, by whatsoever legislative body enacted.

In the case at bar the question presented, however, is no invasion of any of those essential rights to such a degree as to be in any way vital to his rights as a free citizen. The only question here is whether or not a common carrier shall be permitted to deliver to the consignee a package of beer or other intoxicating liquors for his private pleasure in its consumption in excess of the quantity allowed by the statute. Under these circumstances the wiser course would be for this court to adhere to the general rule that it will not in such cases declare a public statute passed by a state in pursuance of a general public policy unconstitutional, but leave that question to be decided by a court of higher jurisdiction.

It is therefore ordered, adjudged, and decreed that the bill of complaint in this case be and the same is hereby dismissed, with costs against the complainant.