JOHN C. WINSTON CO. v. VAUGHAN,
Superintendent of Public Instruction, etc.
No. 1764.

District Court, W. D. Oklahoma.
Aug. 23, 1935.

Supplemental Opinion Aug. 27, 1935.

Frank M. Bailey, of Chickasha, Okl., and Reuben M. Roddie and Hayes, Richardson, Shartel, Gilliland & Jordan, all of Oklahoma City, Okl., for plaintiff.

J. D. Lydick, of Oklahoma City, Okl., Mac Q. Williamson, Atty. Gen., Fred Hansen, Asst. Atty. Gen., and J. Harve Melton, of Oklahoma City, Okl., for defendant.

FRANKLIN E. KENNAMER, District Judge.

This suit was instituted for a prohibitory and mandatory injunction, as well as general equitable relief. The jurisdiction of this court is invoked upon the grounds of diversity of citizenship and that more than $3,000 is involved, exclusive of interest and cost. The plaintiff is a corporation organized under the laws of the state of Pennsylvania, and is engaged in the business of publishing and selling school textbooks. The defendant is a resident of the state of Oklahoma, and is the duly elected, qualified, and acting State Superintendent of Public Instruction of the State of Oklahoma, and is ex officio Secretary of the Oklahoma Textbook Commission. The basis for the relief sought is a contract entered into between the plaintiff and the Oklahoma Textbook Commission on November 9, 1934, by which the plaintiff obtained the right to supply certain textbooks for use in the common schools of Oklahoma for a period of four years. The interference with this contract and the rights obtained thereunder, as well as efforts upon the part of the defendant in encouraging and advising the use of textbooks other than those supplied by plaintiff, constitute the grounds of complaint.

A contract was awarded plaintiff pursuant to sealed bids and proposals submitted by plaintiff, and other parties and corporations, by the Textbook Commission of the State of Oklahoma, acting under authority vested in it by the laws of the state of Oklahoma, House Bill No. 121, chapter 84 of the Laws of the State of Oklahoma 1933 (Harlow's 1934 Supplement § 6694a et seq.). The contract, in substance, provided that the plaintiff agreed, in consideration of the adoption of certain of its publications as textbooks and work books, basic and supplementary, to furnish said books for use in the public schools in the state of

Oklahoma for a period of four years from and after July 1, 1935. The plaintiff was obligated under the contract to maintain suitable and convenient distributing points, and a joint depository with other contractors, where a stock of their textbooks were available to supply all immediate demands, and provided further for the distribution of the books to bonded dealers in each county of the state of Oklahoma from the joint depository. The contract expressly provided that the state of Oklahoma should not be liable to any contractor for any sum, but plaintiff and other contractors were to receive compensation solely and exclusively from the proceeds of the sale of the textbooks, as provided in the contract. The books involved in the action, which plaintiff was obligated to supply, are:

"Human Use Geography" (Two Book Series), by J. Russell Smith.

"English for Use," by Beveridge Ryan and Lewis (Three Book Series).

"New Silent Readers," by Lewis and Rowland.

"Facts and Fancies."

"Whys and Wherefores."

"Scouting Through."

Plaintiff complied with the obligation in the contract, as provided by law, by executing a bond in the sum of $9,000 for the faithful performance of the contract.

The bill of complaint charged, and the proof sustained, the allegation that the plaintiff had prepared and printed textbooks for use in the public schools of the state of Oklahoma at an expense in excess of $45,000, by virtue of the contract, and had delivered said textbooks to the depository in Oklahoma City, where said books had been distributed to each of the counties in Oklahoma where said books are used in the common schools. These books were printed especially for use in Oklahoma schools, and the evidence established that plaintiff would suffer substantially a total loss of the value of the books if their use were discontinued, and unless the defendant, as State Superintendent of Public Instruction and as Secretary of the Oklahoma Textbook Commission, was restrained from sending letters or circulars over his signature advising county superintendents and trustees of school boards of the public schools of the state not to purchase books printed by plaintiff, and encouraging the use of other textbooks in the common schools, and in refusing to advise county superintendents and members of the school boards that plaintiff's books had been legally adopted as textbooks for use in the public schools of Oklahoma. The evidence was uncontradicted that the defendant, as State Superintendent of Public Instruction, had sent letters to county superintendents and members of the school boards advising the use of textbooks in the common schools of Oklahoma other than those printed by plaintiff, for use in subjects treated in the textbooks described in plaintiff's contract. It was established beyond doubt, in accordance with the allegations of plaintiff's bill, that the defendant had refused to recognize plaintiff's contract, or to abide by it, and that his conduct would cause the use of textbooks other than plaintiff's in the common schools of Oklahoma, and would cause the plaintiff irreparable loss. Defendant undertook to justify his conduct by asserting that plaintiff's contract with the Oklahoma Textbook Commission was illegal, and that the books referred to in the contract, and which had been deposited in the depository and used in the common schools, were textbooks that had not been legally adopted. Other contentions were made in the trial of the case which will be referred to hereafter, but the justification submitted for the conduct of the defendant was the alleged illegality of plaintiff's contract.

A consideration of the pertinent provisions of the Oklahoma statute is necessary for a decision of the issues presented. Chapter 84, Session Laws 1933, section 6694a, Harlow's 1934 Supplement, Oklahoma Statutes 1931, created the Textbook Commission of Oklahoma composed of seven members, six of whom were to be appointed by the Governor of the State of Oklahoma, and the Superintendent of Public Instruction was to constitute the seventh member of the commission. The State Superintendent, as a member of the Textbook Commission, was given a vote on all matters with reference thereto, and was designated the secretary of the commission. The statute provided that a majority of the commission may constitute a quorum for the transaction of all business. The act further provided (section 6694d, Harlow's Supplement) that the Textbook Commission was authorized to adopt a uniform system of textbooks for periods of not exceeding five years for use in the common schools of Oklahoma; that the textbooks selected and adopted may include all of those subjects

taught in the common or public schools of Oklahoma up to and including the twelfth grade, but the adoption may be for a period of not to exceed five years, the commission being vested with authority to make adoptions for such periods of time as may seem to be for the best interests of the state, subject to the provision that the commission should not adopt more than one-fifth of such textbooks during the year 1933, without the Governor of the State having first issued an executive order finding and determining that it would be for the best interest of the state that such commission adopt more than one-fifth of the textbooks for use in the public schools. Authority was conferred upon the Governor to make such determination, and he was authorized by executive order to permit the adoption of more than one-fifth of such textbooks, subject to the provision that adoptions to replace existing contracts expiring in 1934 and 1935 should not be made until after May 10th of their respective expiration years. The act further provided that the issuance and filing of such executive order with the Secretary of State should be sufficient authority to the Textbook Commission to execute contracts for any or all additional adoptions. Section 6694f, Harlow's Supplement, provides: "The Secretary shall advertise for at least thirty days prior to the meeting of the Textbook Commission in such manner as he may deem best, for sealed bids from publishers of textbooks for furnishing books to the common schools of this State. Each bid shall state specifically and clearly the retail price at which each book will be furnished and shall be accompanied by sample copies of each and all books offered in said bid." Section 6694g, Harlow's Supplement, provides: "It shall be the duty of the Commission to meet at the time and place mentioned in the advertisement, and it shall adopt such rules and regulations as may be necessary for the transaction of its business, not contrary to the provisions of this article, and it shall then and there open and examine the sealed bids received, and it shall be the duty of the Commission to make a full and complete investigation of all books, and the bids accompanying the same. The books shall be adopted after a careful consideration of all the books presented, and the books selected for adoption shall be those which, in the opinion of the Commission, are best suited for use in the various schools in the state. The Commission shall proceed without delay to adopt, for use of the common schools of this State, textbooks in the grades hereinbefore mentioned, and shall notify publishers to whom contracts are awarded." The act (Harlow's St. Supp. 1934 § 6694j) further provides for the execution of bonds for the faithful performance of the contract, empowers the Attorney General of the State to institute actions for the cancellation of contracts obtained through fraud, and requires the publisher of the books to stamp the retail and exchange prices on the books adopted. Section 6694k, Harlow's Supplement, imposes the duty upon the State Superintendent of Public Instruction to address a circular letter to the county superintendents, trustees, and school boards of the various schools of Oklahoma containing a list of the books, with their respective prices, together with such other information as he may deem advisable. Section 6694o, Harlow's Supplement, provides that the books adopted by the commission shall be introduced and used as textbooks to the exclusion of all others in the common schools of the state.

The evidence established that since the execution of the contract on November 9, 1934, plaintiff has expended large sums of money in preparing and supplying the books covered by the contract to the depositories for distribution after July 1, 1935, but no action has been taken by the Attorney General of the State, or by any other person or official, to terminate plaintiff's contract; but the defendant, as State Superintendent, has advised various school officials to use books in the subjects covered by the textbooks included in plaintiff's contract, other than those published by plaintiff.

Defendant contends that the court is without jurisdiction to entertain plaintiff's bill because it is asserted the plaintiff has an adequate remedy at law in the state courts; that if plaintiff's contract is valid, it can obtain a writ of mandamus to compel the defendant to perform the ministerial duty enjoined upon him by the statute to send letters to superintendents, trustees, and school boards advising them of the adoption of the books printed by plaintiff; that any injunctive relief granted here would in effect be a writ of mandamus; and that this court is without jurisdiction to grant such a writ. Defendant also contends that the Superintendent of Public Instruction was made the Secretary of the Textbook Commission by the act creating it, and that the duty of advertising for at

least thirty days prior to the meeting of the Textbook Commission in such manner as he may deem best for sealed bids from publishers of textbooks is a mandatory provision of the statute; that the advertisement made, wherein the plaintiff's contract was awarded, was not made by the Superintendent of Public Instruction, having been made by another member of the commission, which he alleges renders the contract illegal and void. It was further contended that plaintiff's contract was obtained through fraud, but no competent or material proof was offered in support of this contention, and it will not be necessary to notice this contention further.

■ I am of the opinion that this court has jurisdiction because of want of an adequate remedy at law. Adequate remedy at law sufficient to oust a federal equity court of jurisdiction must be a legal remedy, adequate in the federal courts as well as in the state courts. A party entitled to sue in the federal court may invoke its jurisdiction in equity whenever the established principles and rules of equity permit such a suit in that court; and he cannot be deprived of that right by reason of any legal remedy available to him to sue at law in the state court on the same cause of action.

■ In Risty et al. v. Chicago, Milwaukee & St. Paul R. Co., 270 U. S. 378, at page 388, 46 S. Ct. 236, 240, 70 L. Ed. 641, Mr. Justice Stone, delivering the opinion of the court, said: "The remedy by appeal to the state court under section 8469 [S. Dak. Revised Code, 1919] does not appear to be coextensive with the relief which equity may give. In any event, it is not one which may be availed of at law in the federal courts, and the test of equity jurisdiction in a federal court is the inadequacy of the remedy on the law side of that court and not the inadequacy of the remedies afforded by the state courts." Citing Smyth v. Ames, 169 U. S. 466, 18 S. Ct. 418, 42 L. Ed. 819; Chicago, B. & Q. R. Co. v. Osborne, 265 U. S. 14, 44 S. Ct. 431, 68 L. Ed. 878. See Clarkson Coal Mining Co. et al. v. United Mine Workers of America et al. (D. C.) 23 F.(2d) 208. The rule stands well established that a legal remedy will not oust equity jurisdiction unless it be as certain, prompt, and effective to accomplish the ends of justice as would be afforded in equity. Jefferson v. Gypsy Oil Co. (C. C. A. 8) 27 F.(2d) 304.

Mr. Justice Brewer in Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 S. Ct. 1047, 1052, 38 L. Ed. 1014, passes upon the question here presented adversely to the defendant's contention, stating: "Nor can it be said, in such a case, that relief is obtainable only in the courts of the state. For it may be laid down, as a general proposition, that, whenever a citizen of a state can go into the courts of the state to defend his property against the illegal acts of its officers, a citizen of another state may invoke the jurisdiction of the federal courts to maintain a like defense. A state cannot tie up a citizen of another state, having property rights within its territory invaded by unauthorized acts of its own officers, to suits for redress in its own courts. Given a case where a suit can be maintained in the courts of the state to protect property rights, a citizen of another state may invoke the jurisdiction of the federal courts." Citing authorities.

■ The defendant further contends that this court is without jurisdiction to render the particular judgment sought, to wit, mandamus. It is conceded by the defense that the court has jurisdiction over the persons and the subject-matter of this action, but it is asserted that the applicable rule is that where an aggrieved party is about to suffer irreparable injury, and has no adequate remedy at law, a federal court of equity having jurisdiction over the person and of the subject-matter will grant relief provided, and only provided, the judgment sought is one which a federal court of equity is empowered to render upon the facts involved in the case. Defendant claims that the allegations of the bill of complaint and the proof charge and establish that it was the statutory duty of the Superintendent of Public Instruction, the defendant herein, to send letters to the school officials advising them of the adoption of plaintiff's books as texts to be used in the common schools, and that to enter a decree requiring the defendant to send such letters would in effect be the granting of a writ of mandamus, and that this court is without power to grant such a writ. The following authorities are submitted in support of the want of power of a federal court to issue writs of mandamus, in cases similar to the one here presented: Franklin C. Smith v. Bourbon County, 127 U. S. 105, 8 S. Ct. 1043, 32 L. Ed. 73; Fineran v. Bailey, Secretary of State (C. C. A. La.) 2 F.(2d) 363; White v. County Democratic Executive Committee et al. (D. C.) 60 F. (2d) 973; Creager et al. v. Bryan County

Judge (D. C.) 287 F. 362; Knickerbocker Ice Co. v. Sprague (D. C.) 4 F. Supp. 499. The authorities seem to establish that where the effect of a decree is equivalent to the granting of a writ of mandamus, federal courts of equity are powerless to enter such decrees. There can be no doubt of the jurisdiction and power of Federal District Courts to grant mandatory injunctions. They have been known to equity practice for a long period of time, and the right of a court of equity to issue a mandatory injunction is not seriously questioned here. The contention resolves itself around the effect of the decree sought. This court will not at this time affirmatively compel the defendant to send letters to the school authorities revoking the letters heretofore sent, and advising them of the adoption of books published by plaintiff as textbooks in the particular courses, for the court will assume that the defendant, a public official, will perform his statutory duty, and respect the decree in this case. On the other hand, this court is fully empowered to enjoin the defendant from sending any letters, circulars, or communications to school boards, school superintendents, trustees, patrons, or pupils, unless such letters, circulars, or communications assert and state that the textbooks published by plaintiff are the legally adopted textbooks for the particular courses, and unless such communications advise the persons to whom they are sent of the names of said textbooks and the prices to be paid therefor. This court is fully empowered to enter a decree of injunction against the defendant restraining and enjoining the defendant from sending letters, circulars, or communications advising that plaintiff's contract is illegal, and can also enjoin the defendant from advising school authorities to use any textbooks other than plaintiff's for the particular courses covered by the textbooks described in plaintiff's contract, as well as to restrain the defendant from doing any act destroying, or tending to destroy, the property rights of plaintiff obtained in its contract with the Oklahoma Textbook Commission. A decree herein establishing the validity of plaintiff's contract will be binding upon the defendant, and the court has jurisdiction to include in the decree that the defendant shall be prohibited from disregarding the contract, or from advising others to disregard it, as well as to enjoin the defendant from interfering with plaintiff in the performance of the contract. Injunctions have been a proper subject of equity juris-

diction for many years, and it is not here contended that this court is without such jurisdiction in this case. The decree entered herein will not compel affirmative action upon the part of the defendant, as could be included in a writ of mandamus, but will prohibit the doing of acts, or making communications, unless said acts and communications recognize plaintiff's contractual rights, and inform the school authorities of the matters included in said contract and of the textbook adoptions thereof.

The next proposition for consideration is that the statute (chapter 84, § 6, Session Laws of 1933, section 6694f, Harlow's Supplement) providing that the secretary shall advertise for the bids, and shall give such notice as he may deem best for obtaining sealed bids, is a mandatory provision of the act, and that the advertising under which plaintiff's contract was entered, not having been given by the defendant as Secretary to the Textbook Commission, renders the contract invalid. The evidence establishes that one of the members of the Textbook Commission was designated an assistant secretary, all of the members of the commission except the defendant herein having voted therefor, and that the said commission, exclusive of the defendant, authorized and directed the assistant secretary to give notice in accordance with the statute referred to above; that in pursuance of such directions, notice was given in accordance therewith resulting in twenty-two companies submitting bids on the books contained in the advertisement, and plaintiff's bid being the acceptable one for the books described in its contract. The question for determination is, therefore, whether the statute is mandatory or directory. If it is mandatory, then there is much force in the defendant's contention that the secretary alone was empowered to publish the notice in order to have legal bidding and valid contracts. On the other hand, if the statute is merely directory, then it was within the power of the Textbook Commission to advertise for bids through an assistant secretary, if there was otherwise a sufficient compliance with the statute relating to the subject. We must, therefore, determine whether the statute should be construed as directory or mandatory. There is no universal rule for determining whether statutory provisions are directory or mandatory. A determination of the question may be pursued as in

all other statutory construction, the prime object being to ascertain the legislative intent from a consideration of the entire statute, its nature, its object, and the consequences that would result from construing it as directory, and the consequences that would follow from construing it as mandatory. The form of the statute is not decisive; directory words may give mandatory significance, if that appears to be the legislative intent. A statute must be given a construction which permits its reasonable operation; constructions of statutes rendering them absurd must be avoided; and these rules apply in construing a statute with respect to it being directory or mandatory. Where a clear intent is shown, or the legislative purpose can best be carried out, statutes may be construed as directory, even where they appear mandatory in form, and the same rules of construction may apply where the form is directory. It is not easy in every case to determine the legislative intent. Whether a statute is mandatory or directory depends on whether the thing directed to be done is of the essence of the thing required, or is merely a matter of form. Where the directions of a statute are given merely with a view to the proper and orderly conduct of business, or relate to some immaterial matter, concerning convenience rather than substance, it is generally regarded as directory. Where no substantial rights depend on the statute, or the particular provision thereof, no injury can result from ignoring it. However, where a statute relates to matters of substance, it is generally construed as mandatory, as where such provisions are essential to the validity of the act or proceeding. Considering this section in connection with other vital provisions of the statute, I am unable to reach the construction contended for by the defendant. The power to select and adopt and receive bids for textbooks is vested in a commission composed of seven members. In the first section of the statute (Harlow's St. Supp. 1934, § 6694a) it is provided: "A majority of the Commission shall constitute a quorum for the transaction of all business." Sections 4 and 5 of the act (sections 6694d, 6694e) grant to the commission broad powers to adopt a uniform system of textbooks. Section 8 of the act, section 6694h, Harlow's Supplement, provides that all "bids shall be sealed and delivered to the Chairman of the Commission, to be delivered by him to the Commission for the purpose of considering same. When any person, firm or corporation has been awarded a contract, and the contract and bond required have been filed * * * it shall make an order on the Treasurer of the State * * * and thereupon the Treasurer shall return the deposit to such bidder; but if any successful bidder shall fail to make a contract and bond as herein provided, and within the time stated by the Commission in the advertisement for bids, the Treasurer shall place the deposit of such bidder in the State Treasury to the credit of the available school fund, and the Commission shall readvertise for other bids to supply such books." Considering these pertinent provisions of the act, I am clearly of the opinion that section 6 of the act (section 6694f), providing for the secretary to advertise for bids is only directory, and that the secretary in so advertising is only acting for and on behalf of the commission. It was not the intention of section 6 to clothe the secretary with what in effect would be a veto power over the action of the commission by refusing to perform a ministerial duty. A secretary or clerk usually acts at the instance and under the direction of the body for which he is acting in performing ministerial duties. The only purpose of the advertising is to obtain competitive bids in order that the commission may select from the bidders the best books, in the judgment of the commission, for use in the public schools, at the lowest price. The legislative intent was to provide for the adoption of textbooks by the Textbook Commission rather than by the secretary of the commission. The form of the statute here does not even incline it to a construction of mandate; the commission itself is authorized to fix the times for its meetings; the notice must be not less than thirty days; and the clear intention is that the secretary shall only do the ministerial thing of publishing the notice. He is required to give reasonable notice, determining the contents of such notice, and the method of giving the same. It is rather a direction for the convenience of the commission, and is not one touching the substance. The secretary, under the statute, is directed to give the notice to facilitate the conduct of the business, and no injury has resulted from the evidence adduced, or can result from ignoring the provision requiring the secretary to give notice, where the purpose of the act has been accomplished and the notice given in accordance with the statute, otherwise reasonable and adequate. The evidence further shows

that bidding was had pursuant to the notice, and that the plaintiff was the lowest bidder; that the books covered by its contract are supplied at cheaper or lower prices than those which the defendant has notified the various school officials to purchase from another company, who is without a contract. I cannot accept defendant's contention and construe the statute in such a manner as to render the act absurd. Neither can the statute be reasonably construed to confer power upon the secretary to nullify the statute with respect to adoption of textbooks, or if his refusal to give such notice does not completely nullify the provisions of the act, then it would subject the orderly functions of the Textbook Commission to unreasonable and vexatious delay in its effort to compel performance of the ministerial duties imposed upon the secretary under the statute.

In School District No. 61 v. Consolidated District, 110 Okl. 263, 237 P. 1110, it was held: "In general, statutory provisions directing the mode of proceeding by public officers and intended to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties cannot be injuriously affected, are not regarded as mandatory, unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated." Citing 25 R. C. L. p. 769, § 16. The Supreme Court of Oklahoma in this case approves the rule announced in Gallup v. Smith, 59 Conn. 354, 22 A. 334, 12 L. R. A. 353. In this case the statute provided that when any judge of probate shall be disqualified to act, the clerk of the court of probate should cite in the judge of probate of an adjoining district. It appeared that the disqualified judge himself cited in another judge instead of the clerk having done so as provided in the statute. The court held that the thing to be accomplished was securing a judge from an adjoining district to act instead of the resident judge, and the statute requiring the citing in the judge by the clerk of the court instead of the judge was only directory and not mandatory.

In the instant case, the only thing to be accomplished under the broad provisions of the act is the securing of suitable textbooks at competitive bidding, and the only purpose of the advertising is to obtain such bidders in order that the commission may select the best books at the lowest price in the interest of the public. The evidence in the case fully supports the conclusion that such purpose was accomplished by the commission in the manner in which it proceeded. See Felts v. Edwards, 181 Ky. 287, 204 S. W. 145; Wait v. Southern Oil & Tar Co., 209 Ky. 682, 273 S. W. 473.

McNees v. School Township, 133 Iowa, 120, 110 N. W. 325, is strongly relied upon by the defendant. I have carefully considered this case and do not believe it is in conflict with the general rule established by numerous authorities, that statutory provisions directing the mode of proceeding by public officers, and intended to secure order, system, and dispatch, where no injury will result, should be construed to be directory. In this case the statute required a question to be voted upon by the school district to be submitted upon the order of the school board. The election was held upon notice issued by the clerk without an order of the board. The court held that the board of directors of the district had failed to order the election as required by the statute. It is clear in this case that the board had failed to act in ordering the election as required by the statute.

In the instant case the Textbook Commission acted in accordance with the statute in adopting textbooks and awarding contracts, except that the notice was given by an assistant secretary designated by the commission, rather than by the secretary designated by the statute. The commission acted by its majority, and I am of the opinion that the legislative intent clearly contemplated action and performance by a majority of the commission, free from the control and veto of one of its members. My conclusion is that a reasonable construction of the act compels a ruling that the acts of the Textbook Commission, as approved by six members thereof, in obtaining bids upon notice by said commission, through its assistant secretary, is valid; there being no evidence that the action of the six members was fraudulent or collusive in awarding the contract involved in the action.

It is insisted by defendant that the adoption of part of the textbooks covered by plaintiff's contract, to wit, "The Three Book Series, Books 1, 2 and 3, English for Use by Beveridge Ryan and Lewis," are illegal because the same were adopted on October 19, 1934, to replace existing contracts expiring June 30, 1935. It is insisted that the act provided that adoptions

should not be made until May 10th of the respective expiration years, and that the adoption should have been made subsequent to May 10th, rather than in the month of October. The evidence discloses that Houghton-Mifflin Company had contracted with the state of Oklahoma for the furnishing of such textbooks, and that their contract had not yet expired, but that the Governor of the State of Oklahoma had issued an executive order declaring the contract terminated. We are not here presented with any claims of Houghton-Mifflin Company with respect to its contract for the furnishing of such textbooks. Upon the issuance of the executive order Houghton-Mifflin Company treated their contract as canceled, and abandoned the same, submitting bids pursuant to the notice upon which plaintiff's contract was awarded. The purpose of the statutory provision delaying the adoption until May 10th of the respective expiration years was to prevent interference with existing contracts. The Houghton-Mifflin Company contract having been terminated, and that termination having been acquiesced in by all parties as completely abrogating it, in my opinion, justified the Textbook Commission in awarding a new contract and making new adoptions for the particular subjects. It should be noted that the evidence established that the Governor sought a reduction in the prices of the textbooks included in the Houghton-Mifflin Company contract, and upon their refusal to lower the prices the executive order was entered resulting in the termination of the contract, and the acquiescence of the contractor thereto. My opinion, therefore, is that the Textbook Commission lawfully adopted the English series, in view of the fact of the termination of the existing contract.

My conclusion is that the contract of the plaintiff with the Oklahoma Textbook Commission is a valid subsisting agreement; that the plaintiff is entitled to a decree enjoining the defendant from writing any letters, or otherwise making any communications, to any school board, superintendent, member, trustee, or school officials interfering with plaintiff's contract, or asserting its invalidity, and further enjoining the defendant from making any communications relative to the textbooks included in plaintiff's contract, unless the defendant states in such communications that said textbooks are the lawfully adopted textbooks for use in the particular courses in the common schools of Oklahoma, as well as stating the prices therefor.

### On Motion to Modify Decree.

This case was before the court upon a motion filed by the plaintiff to modify the final decree entered herein on the 22d day of August, 1935, and to grant the plaintiff a mandatory injunction.

It appears from the presentation of the motion that the defendant, in anticipation of the filing of this suit on the day prior to the filing of the bill herein, sent out letters advising the superintendents of public instruction of the various counties, and members of the school boards of the state, to use books other than the textbooks covered by the plaintiff's contract in the schools of Oklahoma, and that unless the plaintiff may have this letter recalled and the action of the defendant revoked, the relief granted in the final decree herein will be inadequate to protect the property rights of the plaintiff in its contract. Whilst this court would not issue an order directing the defendant to send out the notice as provided for in section 6694k, Harlow's Supplement (O. S.) 1934, if this action sought only such relief, but where the court has jurisdiction over the parties by reason of diversity of citizenship, and the requisite amount is involved, inadequacy of remedy at law exists in this court, and the court having jurisdiction to enjoin the defendant from wrongful and unlawful acts which invade injuriously the property rights of the plaintiff, relief, if necessary, may be mandatory injunction, requiring affirmative action on the part of the defendant, in order that any injury inflicted by reason of the wrongful acts which have been done in anticipation of the suit, and for the purpose of obtaining an unfair advantage, may be remedied and adequate relief afforded in the premises. It is well settled equity having acquired jurisdiction of the case will afford complete relief.

In the case of In re Lennon, 166 U. S. 548, 552, at page 556, 17 S. Ct. 658, 661, 41 L. Ed. 1110, the court said: "But it was clearly not beyond the power of a court of equity, which is not always limited to the restraint of a contemplated or threatened action, but may even require affirmative action, where the circumstances of the case demand it. Robinson v. Lord Byron, 1 Brown, c. 587; Hervey v. Smith, 1 Kay & J. 389; Beadel v. Perry, L. R. 3 Eq. 465; Whitecar v. Michenor, 37 N. J. Eq. 6; Broome v. New York & New Jersey Tele-

phone Co., 42 N. J. Eq. 141, 7 A. 851." See Toledo A. A. & N. M. R. Co. v. Pennsylvania Co. (C. C.) 54 F. 730, 19 L. R. A. 387; Love v. Atchison, T. & S. F. R. Co. (C. C. A.) 185 F. 321; Gaines v. Baltimore & C. S. S. Co. (D. C.) 234 F. 786, 787, loc. cit. 789; George W. Armbruster, Jr., Inc., v. City of Wildwood (D. C.) 41 F.(2d) 823; Wilson v. Bowers (D. C.) 14 F.(2d) 976; Hoover Co. v. Sesqui-Centennial Exhibition Ass'n (D. C.) 48 F.(2d) 1061.

My conclusion is, under the peculiar circumstances existing in this case, and the irreparable injury that would result to the plaintiff upon a failure to obtain adequate relief, that the defendant should be enjoined to issue a notice and send it to the various superintendents of public instruction, and members of school boards throughout the state, recalling and revoking the former letter, and advising that the plaintiff has a valid contract covering the books named therein, to be used in the public schools of Oklahoma.